623 P.2d 805

Dr. Allen S. LIPSCHULTZ, M. D. and Jane Doe I Lipschultz, his wife; Dr. Arthur Lipschultz, M. D. and Jane Doe II Lipschultz, his wife, Petitioners,

v.

The SUPERIOR COURT of the State of Arizona, in and for the COUNTY OF MARICOPA; and the Honorable Howard F. Thompson; and Evelyn M. Gurcius, Diane Gurcius, Richard Gurcius, Ronald Gurcius, and Sharon Gurcius, a minor, by and through Evelyn M. Gurcius; and Humana, Inc., an Arizona Corporation, Respondents.

No. 15078.

Supreme Court of Arizona,
In Banc.

Jan. 26, 1981.

Jones, Teilborg, Sanders, Haga & Parks by Neil C. Alden, Phoenix, for petitioners.

Hyder & Brand by Sid A. Horwitz, William F. Hyder, Phoenix, for respondents.

Robert K. Corbin, Atty. Gen. by Charles E. Buri, Asst. Atty. Gen., Phoenix, brief amicus curiae for Arizona Bd. of Medical Examiners.

Lewis & Roca by Roger W. Kaufman, Phoenix, brief amicus curiae for Arizona Hospital Assn. and Medical Ins. Co. of Arizona.

CAMERON, Justice.

We granted this petition for special action pursuant to Article 6, § 5 of the Arizona Constitution and Rule 1, Rules of Procedure for Special Actions, 17A A.R.S., because this is a matter of state-wide importance and there is no equal, plain, speedy and adequate remedy by appeal.

We must answer two questions:

1. Is information obtained by the Arizona Board of Medical Examiners in its investigation of alleged medical malpractice pursuant to statute, A.R.S. § 32–1451.01, privileged?

2. If a privilege exists, is it properly enforceable by the petitioners?

The facts necessary to a determination of these issues are as follows. Petitioners, Drs. Allen and Arthur Lipschultz, are defendants in a medical malpractice lawsuit pending in the Superior Court of Arizona instituted by respondents (and plaintiffs) Evelyn Gurcius, Diane Gurcius, Richard Gurcius, Ronald Gurcius and Sharon Gurcius (the Gurciuses), the surviving spouse and children of Ignatz Gurcius who died while being treated at Doctors Hospital.

As a result of the malpractice claim made by the plaintiffs, the Arizona Board of Medical Examiners (the Board) received a report from the doctors' malpractice insurer. As required by statute, A.R.S. § 32–1451.01, the Board initiated an investigation of the claim and in the process obtained pertinent medical records, autopsy reports, and statements from Dr. Allen Lipschultz. Plaintiffs had issued a subpoena duces tecum directed to the Board for:

"Any and all documentation, including reports of Dr. Arthur Lipschultz, Dr. Allen Lipschultz, officers, agents, or employees of Humana, Inc., dba Doctor's Hospital, or any third party doctors or witnesses, statements, letters or communications by the aforesaid individuals, or any third party doctor or witness, submitted to the Arizona Board of Medical Examiners and which relate to the treatment, care and/or death of Ignatz Gurcius, who was in Doctors Hospital from September 27, 1977 to November 4, 1977 and died on November 4, 1977."

Following the Board's objection to the subpoena on the grounds that the subpoena called for production of privileged material and the plaintiffs' motion to compel production of the documents, a hearing was held before the trial judge who, after conducting an in camera inspection of the Board's file, ordered the Board to provide plaintiffs the following material:

"1. Hand written letter to Board of Medical Examiners signed by Alan [Allen] S. Lipschultz.

2. Letter to Arizona Board of Medical Examiners dated November 15, 1979 from Alan [Allen] S. Lipschultz.

3. Autopsy reports dated November 5, 1977 and November 14, 1977."

And the court

"FURTHER ORDERED that the Court will retain the medical records from Doctor's Hospital for examination by counsel for Plaintiffs, same may be examined at any reasonable time."

From this order, the defendants brought this petition for special action. We accepted jurisdiction and granted the applications of the Board, the Mutual Insurance Company of Arizona, and the Arizona Hospital Association to file briefs amici curiae.

## PRIVILEGE

The Board of Medical Examiners is responsible for the licensing and regulation of medicine and surgery in Arizona. A.R.S. § 32–1401 et seq. The Board is authorized by A.R.S. § 32–1451 to investigate any evidence which indicates that a doctor is incompetent or guilty of unprofessional conduct and A.R.S. § 32–1451.01(A) provides that the Board shall have access to informa-

tion relating to "medical competence, unprofessional conduct or the mental or physical ability of a doctor of medicine safely to practice medicine." Subsection B gives the Board subpoena powers and procedures for enforcing those powers. Subsection C reads as follows:

> "C. Patient records, including clinical records, medical reports, laboratory statements and reports, any file, film, any other report or oral statement relating to diagnostic findings or treatment of patients, any information from which a patient or his family might be identified or information received and records kept by the board as a result of the investigation procedure outlined in this chapter shall not be available to the public."

Subsection D dispenses with the physician-patient privilege in investigations of malpractice by the Board, but requires the Board and its employees to keep the names of any patients confidential.

Subsection E reads as follows:

> "E. Hospital records, medical staff records, medical staff review committee records, and testimony concerning such records and proceedings related to the creation of such records shall not be available to the public, shall be kept confidential by the board and shall be subject to the same provisions concerning discovery and use in legal actions as are the original records in the possession and control of hospitals, their medical staffs, and their medical staff review committees. The board shall use such records and testimony during the course of investigations and proceedings pursuant to this chapter."

### Subsection C

■ Subsection C provides, in effect, that the following information shall not be made available to the public:

1. patient records,
2. information used in diagnosis and treatment,
3. information which might identify the patient or members of his family, and

4. information and records received and kept by the Board in its investigation of the malpractice claim.

In the instant case, even though the subpoenaed information might properly be classified as patient records, diagnostic information or information which might identify the patient, it is clearly "information and records received and kept by the board" as a result of its required investigation of the malpractice action. Thus, pursuant to subsection C, all the material gathered by the Board in its investigation mandated by A.R.S. §§ 32–1451 and 32–1451.01 would not be available to the "public" and is therefore not discoverable. As we have stated:

> "We believe the statute prohibits disclosure of the subpoenaed information. The information was given with the promise that it would be kept confidential. There are no exceptions set forth in A.R.S. § 42–223(B) (except for enforcement of A.R.S. § 42–222) and strict construction requires that no exception be implied." *Grossman v. Westmoreland II Investors*, 123 Ariz. 223, 225, 599 P.2d 179, 181 (1979).

Subsection C contains no exceptions and no exceptions are implied. Under subsection C, the material is privileged and not available to the public and may not be reached by subpoena. *Grossman, supra.*

### Subsection E

■ The plaintiffs contend that subsection E allows them to discover this information. Subsection E concerns "Hospital records, medical staff records, * * * and testimony concerning such records" which "shall not be available to the public," and must be "kept confidential by the board."

Subsection E, however, provides that this information "shall be subject to the same provisions concerning discovery and use in legal actions as are the original records in the possession and control of hospitals, their medical staffs, and their medical staff review committees." What this phrase means is that evidence in the possession of the Board, not otherwise privileged, may be the

subject of discovery. Because the Board of Medical Examiners has obtained certain evidence does not make that evidence privileged if it was not privileged before it came into the Board's possession. To so hold would mean that evidence in the possession of the Board would have a greater degree of protection than it possessed prior to being obtained by the Board. We do not believe that this was the intent of the legislature when drafting this subsection.

In summary, A.R.S. § 32–1451.01(C) sets forth the general rule that "medical records * * * information received and records kept by the board as a result of the investigation procedure * * * " are absolutely privileged. Subsection E of A.R.S. § 32–1451.01 restates this general rule of non-disclosure with respect to hospital and peer review records and testimony and proceedings related to such records, but also provides a limited exception allowing discovery. Factual information not privileged in the "possession and control" of the appropriate medical unit, does not become privileged because the information is transmitted to the Board. See *Tucson Medical Center, Inc. v. Misevch*, 113 Ariz. 34, 545 P.2d 958 (1976), regarding the privilege of products of the deliberations of hospital medical review boards and A.R.S. § 12–2235; A.R.S. § 36–445.01(B). In effect, the only material that can be discovered from the Board is 'material which could also be discovered from "hospitals, their medical staffs, and their medical staff review committees." *Tucson Medical Center, Inc. v. Misevch*, supra.

In the instant case, the two letters by Dr. Allen Lipschultz, being in response to the Board's request and in aid of the Board's investigation as provided in subsection C and not a hospital or medical staff record as provided in subsection E, would be privileged and not discoverable. We cannot, however, from the record before us, determine whether or not the autopsy reports or the medical records from Doctors Hospital are privileged. They appear to be hospital, medical staff or medical staff review committee records as set forth in subsection E and, if so, even though they are at the same time information encompassed by subsec-

tion C, they could be discoverable. On rehearing the trial court may determine if these items should be turned over to the plaintiffs.

Nothing we say in this opinion should be interpreted to favor the use of the Board to provide information to litigants that is otherwise readily available from other sources. Requiring the Board of Medical Examiners to provide the litigant with information obtained as a result of their investigation, when the litigant has other sources for obtaining the same information, could be oppressive and burdensome. See Rule 26(c), Rules of Civil Procedure, 16 A.R.S., which provides that protective orders may be issued "to protect a party or person from annoyance, embarrassment, oppression, or other burden or expense." If the Board is required to respond indiscriminately to subpoenas every time there is a medical malpractice suit, it will have a chilling effect on the Board's obtaining as complete a file as possible in each investigation of alleged malpractice acts. The trial court should not only consider the discoverability of the documents and records pursuant to subsection E, but should also consider the burden that such a request will place on the Board of Medical Examiners.

### CAN PETITIONERS ENFORCE THE PRIVILEGE?

The plaintiffs (Gurciuses) contend that the doctors are without standing to contest the trial court's discovery order because the right to object to the production of subpoenaed documents is reserved solely to the witness to whom the subpoena is directed. It is true that generally a party may not challenge a discovery order directed to a non-party witness, the right to object being in the witness who has been subpoenaed, in this case the Board. *MacDonald v. Hyder*, 12 Ariz.App. 411, 471 P.2d 296 (1970).

This rule preventing a party from challenging a discovery order directed to a non-party witness is, however, not absolute. If a party "can make a claim to some per-

**20**

sonal right to privilege in respect to the subject matter of a subpoena duces tecum directed to a non-party witness," the party has a right to contest the subpoena. *MacDonald v. Hyder*, supra, 12 Ariz.App. at 417, 471 P.2d at 302, quoting *Shepherd v. Castle*, 20 F.R.D. 184, 188 (W.D.Mo.1957); Wright & Miller, Federal Practice & Procedure, Civil § 2035 (1970); McCormick on Evidence, § 73(b) (2d ed. 1972); 8 Wigmore, Evidence § 2377 (McNaughton rev. 1961).

This exception to the general rule recognizes that in some cases the underlying purpose of the privilege would be defeated if the privilege could not be asserted by a stranger to the relationship. *Tucson Medical Center, Inc. v. Misevch*, supra; *Tucson Medical Center Inc. v. Rowles*, 21 Ariz.App. 424, 520 P.2d 518 (1974).

"The last reason advanced for allowing the admission of the statement in the I.C.C. report is that the statute (Title 49 U.S.C. § 320(f)) extends a limited privilege against disclosure which is exercisable only by the carrier filing the report and cannot be invoked by others. We cannot agree. There is nothing in the history of Title 49 U.S.C. § 320(f) to indicate that Congress intended the statute

to bestow only to a carrier the right to prohibit disclosure of the contents of an accident report * * *." *Blankenship v. General Motors Corporation*, 428 F.2d 1006, 1009, 12 A.L.R.Fed. 932, 940 (6th Cir. 1970); see *Martin v. Cafer*, 258 Iowa 176, 138 N.W.2d 71 (1965).

■ There is no expression of intent by the legislature that the privilege of subsections C and E can only be invoked by the Board. In the present case, the trial judge ordered the Board to produce statements of Dr. Allen Lipschultz, the autopsy reports, and the records of Doctors Hospital. The doctors had the right to invoke the privilege of A.R.S. § 32–1451.01(C).

Remanded for further proceedings consistent with this opinion.

STRUCKMEYER, C. J., HOLOHAN, V. C. J., and HAYS and GORDON, JJ., concur.