742 P.2d 1382

HUMANA HOSPITAL DESERT VALLEY, a business name of Humana of Arizona, Inc., an Arizona corporation; Paul Blumberg, D.O., Petitioners,

v.

SUPERIOR COURT OF the State of ARIZONA, In and For the COUNTY OF MARICOPA, Honorable Marilyn A. Riddel, a judge thereof, Respondent Judge,

Marily Darice EDISON, Real
Party in Interest.

SAMARITAN HEALTH SERVICE dba Desert Samaritan Medical Center; Phoenix General Hospital; Chandler Community Hospital; John C. Lincoln Hospital; Mesa Lutheran Hospital; Phoenix Community Medical Center, Petitioners,

v.

SUPERIOR COURT OF the State of ARIZONA, In and For the COUNTY OF MARICOPA, Honorable Marilyn A. Riddel, a judge thereof, Respondent Judge,

Marilyn Darice EDISON, Real
Party in Interest.

Nos. 1 CA–SA 035, 1 CA–SA 034.

Court of Appeals of Arizona,
Division 1, Department B.

July 16, 1987.
Review Denied Oct. 20, 1987.

Teilborg, Sanders & Parks by James W. Kaucher, Phoenix, for petitioner Humana Hosp.

Weyl, Guyer, MacBan & Olson, P.A. by Robert H. Kleinschmidt, Phoenix, for petitioner Dr. Blumberg.

Lewis and Roca by John P. Frank, Roger W. Kaufman, Beth J. Schermer, Phoenix, for petitioners Samaritan.

Leonard & Clancy, P.C. by James J. Leonard, Jr., Phoenix, for Real Party in Interest Edison.

## OPINION

CORCORAN, Judge.

### 1. *Introduction*

These special action petitions request review of the trial court's denial of a motion to quash discovery of hospital peer review documents. The special actions arise from the same medical malpractice case against petitioner Paul Blumberg, D.O. and petitioner Humana Hospital. The other petitioners (collectively referred to as Samaritan) are not parties to the underlying action. These hospitals were served with subpoenas duces tecum by real party in interest, Edison, plaintiff in the trial court.

Petitioners allege that the trial court improperly denied their motions to quash the subpoenas duces tecum.

Arizona's Peer Review Act (the Act) governs the discoverability of peer review material. The Act states:

§ 36–445. **Review of certain medical practices**

The governing body of each licensed hospital ... shall require that physicians admitted to practice in the hospital ... organize into committees or other organizational structures to review the professional practices within the hospital or center for the purposes of reducing morbidity and mortality and for the improvement of the care of patients provided in the institution. Such review shall include the nature, quality and necessity of the care provided and the preventability of complications and deaths occurring in the hospital....

§ 36–445.01. **Confidentiality of information; conditions of disclosure**

A. All proceedings, records and materials prepared in connection with the reviews provided for in § 36–445, *including all peer reviews of individual health care providers practicing in and applying to practice in hospitals or outpatient surgical centers and the records of such reviews, shall be confidential and shall not be subject to discovery except in proceedings before the board of medical examiners, or the board of osteopathic examiners*, or in actions by an individual health care provider against a hospital.... No member of a committee established under the provisions of § 36–445 or officer or other member of a hospital's or center's medical, administrative or nursing staff engaged in assisting the hospital or center to carry out functions in accordance with that section or any person furnishing information to a committee performing peer review may be subpoenaed to testify in any judicial or quasi-judicial proceeding if such subpoena is based solely on such activities.

B. This article shall not be construed to affect any patient's claim to privilege or privacy or to prevent the subpoena of a patient's medical records if they are otherwise subject to discovery.... In any legal action brought against a hospital or outpatient surgical center ... claiming negligence for failure to adequately do peer review, representatives of the hospital or center are permitted to testify as to whether there was peer review as to the subject matter being litigated. *The contents and records of the peer review proceedings are fully confidential and inadmissible as evidence in any court of law.*

(Emphasis added.)

The subpoenas duces tecum requested the following documents from the hospitals' credentials files on Dr. Blumberg:

1. Any and all records in your possession relative to Paul Blumberg, D.O., including, but not limited to:

(a) application for staff privileges;

(b) application for any training program;

(c) any records reflecting hospital investigation into the application for staff privileges, including, although not limited to, the physician's background, experience and work before becoming associated with your organization;

(d) any and all records indicating hospital review or investigation of the work of Dr. Blumberg since he has been on your medical staff to the present time.

The trial court's order compelling production of the documents did not mention documents addressed in part (d) of the subpoenas, and no issue regarding part (d) is presented to us.

Petitioners either objected to the subpoenas pursuant to rule 45(e), Arizona Rules of Civil Procedure, or filed motions for protective orders, claiming that the requested materials were absolutely privileged under the Act.

The trial court held that applications for staff privileges or training program positions, and any investigations made by the reviewing committees into those applications, are not subject to the Act. The hospitals contend that the privilege expressly conferred by the Act applies to the

records subpoenaed. We agree; therefore we grant relief and reverse.

At oral argument before this court, counsel for petitioner hospitals offered to provide Edison with information regarding Dr. Blumberg's application for training programs referred to in part (b) of the subpoenas; therefore we do not address that issue. After oral argument, this court ordered the parties to file supplemental memoranda addressing two constitutional issues relating to the peer review privilege. Therefore, the issues are:

1. Whether Arizona's peer review act effectively abrogates a cause of action against a hospital for negligent physician evaluation and supervision, violating Ariz. Const. Art. 18 § 6.

2. Whether Arizona's Act infringes upon the Arizona Supreme Court's rule-making power, violating Ariz. Const. Art. 6 § 5(5).

3. Whether hospital records of physicians' applications for staff privileges, as well as records reflecting hospital investigations into those applications, are absolutely privileged from discovery under the Act.

4. Whether a party-physician and/or a party-hospital has standing under the Act to object to the subpoenaing of the party-physician's credentials files from nonparty hospitals.

## 2. *Jurisdiction*

Because petitioners have no equally plain, speedy and adequate remedy by appeal, and because the questions presented are of substantial public magnitude, we accept jurisdiction. A.R.S. § 12–120.21; rule 1(a), Rules of Procedure for Special Actions; *United States v. Superior Court,* 144 Ariz. 265, 697 P.2d 658 (1985).

## 3. *The Anti-Abrogation Clause*

Edison claims Humana is liable for negligently supervising Dr. Blumberg under *Purcell v. Zimbelman,* 18 Ariz.App. 75, 500 P.2d 335 (1972). Dr. Blumberg argues that Edison's cause of action is not protected by the anti-abrogation clause because it does not apply to actions which did not exist at common law in 1912, when Arizona's constitution was adopted. Arizona first gave cognizance to a negligent supervision claim in 1972. *Purcell.*

■ Ariz. Const. Art. 18 § 6 (the anti-abrogation clause) provides:

> [T]he right of action to recover damages for injury shall never be abrogated, and the amount recovered shall not be subject to any statutory limitation.

This clause protects all common law principles and causes of action, not just those existing in 1912. *Boswell v. Phoenix Newspapers, Inc.,* 152 Ariz. 9, 730 P.2d 186 (1986). The *Boswell* court reasoned:

> The constitutional protection extends to wrongs recognized at common law, but it is not limited to those elements and concepts of particular actions which were defined in our pre-statehood case law.... The law must allow for evolution of common-law actions to reflect today's needs and knowledge. Any other rule would allow those "long dead" to dictate solutions to problems of which they could not have been aware.

152 Ariz. at 17–18, 730 P.2d at 194–95. We therefore hold that the anti-abrogation clause applies to negligent supervision actions.

Humana argues that the peer review statute does not violate the anti-abrogation clause because it merely *regulates* how a negligent supervision action may be maintained instead of impermissibly abrogating such an action. In *Barrio v. San Manuel Div. Hosp.,* 143 Ariz. 101, 692 P.2d 280 (1984), the court discussed the distinction between abrogation and regulation:

> The legislature may *regulate* the cause of action for negligence so long as it leaves a claimant *reasonable alternatives or choices which will enable him or her to bring the action.* It may not, under the guise of "regulation," so affect the fundamental right to sue for damages as to effectively deprive the claimant of the ability to bring the action.

143 Ariz. at 106, 692 P.2d at 285 (emphasis added).

In the underlying action, Edison is suing Humana for negligently allowing Dr. Blumberg to practice on its staff and for negligently supervising Dr. Blumberg. To prove a negligent supervision theory, a plaintiff must establish that the hospital knew or should have known that a physician was not competent to provide certain care and that the hospital's failure to supervise the physician caused injury to the plaintiff. *Tucson Med. Center v. Misevch,* 113 Ariz. 34, 36, 545 P.2d 958, 960 (1976).

Contrary to her assertion, Edison is left with ample alternatives to prove her negligent supervision theory against Humana without obtaining access to privileged information. Information which originated outside the peer review process is not subject to the privilege and, if otherwise admissible, could be used to prove Edison's case. *Shelton v. Morehead Mem. Hosp.,* 318 N.C. 76, 347 S.E.2d 824 (1986). In *Shelton,* the court held that information which is available from original sources is not immune from discovery or use at trial merely because it was used by a medical review committee. *See also Jenkins v. Wu,* 102 Ill.2d 468, 82 Ill.Dec. 382, 468 N.E.2d 1162 (1984); *Good Samaritan Hosp. Ass'n v. Simon,* 370 So.2d 1174 (Fla. App.1979). Such original sources include court records about previous malpractice claims and administrative records or testimony about a physician's education and training.

A plaintiff can also discover a hospital's general credentialing or review procedure policies. A.R.S. § 36–445.01(B) provides that representatives of a hospital may testify whether peer review was conducted with regard to the subject matter being litigated. A plaintiff also has access to medical records available pursuant to a patient's consent. Finally, a plaintiff can retain experts to give opinions regarding all of the above matters. Edison apparently found an expert who has expressed opinions in support of her claims. Therefore, neither the Act nor our holding today bars a malpractice plaintiff from proving a negligent supervision claim against a hospital.

Moreover, if this court were to eliminate the peer review privilege, it would negate an important state interest. *See Morse v. Gerity,* 520 F.Supp. 470, 472 (D.Conn.1981). Arizona courts have recognized that the confidentiality of peer review committee proceedings is essential to achieve complete investigation and review of medical care. These deliberations would terminate if they were subject to the discovery process. *See Misevch,* 113 Ariz. at 38, 545 P.2d at 962, *citing Bredice v. Doctors Hosp.,* 50 F.R.D. 249, 250 (D.D.C.1970), *aff'd,* 479 F.2d 920 (D.C.Cir.1973). As one commentator stated:

> Doctors are motivated to engage in strict peer review by the desire to maintain the patient's well-being and to establish a highly respected name for both the hospital and the practitioner within the public and professional communities. However, doctors seem to be reluctant to engage in strict peer review due to a number of apprehensions: loss of referrals, respect, and friends, possible retaliations, vulnerability to torts, and fear of malpractice actions in which the records of the peer review proceedings might be used.

Comment, *Medical Peer Review Protection in the Health Care Industry,* 52 Temple L.Q. 552, 558 (1979). In *Scappatura v. Baptist Hosp.,* 120 Ariz. 204, 210, 584 P.2d 1195, 1201 (App.1978), the court stated: "Review by one's peers within a hospital is not only time consuming, unpaid work, it is also likely to generate bad feelings and result in unpopularity."

These important policy considerations mandate our protection of the peer review privilege. Because plaintiff is not deprived of her ability to bring a negligent supervision action, and because of the overriding public interest in candid professional peer review, we hold that the peer review act merely regulates a plaintiff's claim against a hospital for negligent supervision, and does not violate Ariz. Const. Art. 18 § 6.

### 4. Peer Review Act and the Supreme Court's Rule-making Power

Ariz. Const. Art. 6 § 5(5) empowers our supreme court to make rules regarding

all procedural matters in our courts. Pursuant to that rule-making power, the supreme court promulgated both the Rules of Civil Procedure and the Rules of Evidence.

Statutes which deal with rules of procedure are not *per se* unconstitutional as infringements upon this power. In *Daou v. Harris,* 139 Ariz. 353, 358, 678 P.2d 934, 939 (1984), the court held that legislative enactments dealing with rules of procedure shall be deemed rules of court and shall remain in effect until modified or suspended by Arizona Supreme Court rules.

In some instances, the legislature may create a substantive privilege. *Readenour v. Marion Power Shovel,* 149 Ariz. 442, 446, 719 P.2d 1058, 1062 (1986); *Barsema v. Susong,* 2 CA–CIV 5794 (Ariz.Ct.App. Oct. 9, 1986) (petition for review pending in CV–87–0031–PR). The supreme court has discussed what should be done if a statute and a rule conflict:

> That we possess the rule-making power does not imply that we will never recognize a statutory rule. We will recognize "statutory arrangements which seem reasonable and workable" and which supplement the rules we have promulgated. *Alexander v. Delgado,* 84 N.M. 717, 718, 507 P.2d 778, 779 (1973). However, when a conflict arises, or a statutory rule tends to engulf a general rule of admissibility, we must draw the line. The legislature cannot repeal the Rules of Evidence or the Rules of Civil Procedure made pursuant to the power provided us in article 6, § 5.

*Barsema,* slip op. at 6, *citing State ex rel. Collins v. Seidel,* 142 Ariz. 587, 591, 691 P.2d 678, 682 (1984).

■ Rule 26(b), Arizona Rules of Civil Procedure, provides for general discoverability of information subject to an exception for privileged matters. Likewise, the Arizona Rules of Evidence exempt privileged material from admission, including material granted a privilege by statute. Rule 402. Additionally, rule 501 expressly recognizes that privileges may be established by statute:

> Except as otherwise required by the Constitution of the United States, the Constitution of Arizona, *or by applicable statute or rule,* privilege shall be governed by the principles of the common law as they may be interpreted in light of reason.

(Emphasis added.) The Act is a "reasonable and workable" statute consistent with the supreme court's rules. It protects the peer review process itself—the discussions, exchanges and opinions found in the committee minutes. It does not protect otherwise discoverable factual information obtained from alternative sources.

The legislature has determined that a peer review privilege is necessary to encourage the free flow of information essential for effective peer review. Like other statutory privileges, the hospital peer review privilege meets the four traditional criteria for privileged communications:

1. it originates in confidence that it will not be disclosed;

2. this element of confidentiality is essential to the full maintenance of the relationship between the parties;

3. the relationship is one which the community thinks ought to be fostered; and

4. the injury to the relationship that would occur from the disclosing would be greater than the benefit gained by the aid given to the litigation.

8 Wigmore, *Evidence* § 2285 at 527 (McNaughton rev. 1961); *see generally* 1 M. Udall & J. Livermore, *Arizona Practice: Law of Evidence* § 71 at 123–26 (2d ed. 1982).

Respondent's reliance on *Bartlett v. Danti,* 503 A.2d 515 (R.I.1986), is misplaced. That case invalidated a statute permitting any patient—even a party to a suit—to preclude a court from reaching the patient's medical records without his consent.

Due to the overwhelming public policy supporting the hospital peer review privilege and because the statute does not conflict with any rule, it remains valid. *Daou v. Harris.* We hold that the hospital peer review privilege does not invade the rule-making power of the supreme court.

Having found no merit to the constitutional challenges to the Act, we consider whether the subpoenas duces tecum dealt with discovery of privileged information.

### 5. *The Information Sought in the Subpoenas Duces Tecum is Privileged*

The trial court ordered production of Dr. Blumberg's applications for staff privileges at the hospitals, as well as records relating to investigations into those applications. The hospitals claim that the trial court erred when it ordered production of credentials committee documents because the Act precludes discovery of the review of medical staff privilege applications by credentials committees. However, Edison urges a narrow construction of the privilege— that it merely confers protection to retrospective peer review of medical care.

■■■ A court should look to the words, context, subject matter, consequences, reason and spirit of the law to garner legislative intent. *Arnold Constr. Co. v. Arizona Bd. of Regents,* 109 Ariz. 495, 512 P.2d 1229 (1973). Examination of these factors mandates that credentials committee files be protected by the peer review privilege.

First, the express language of the statute protects the credentials file. A.R.S. § 36–445.01(A) and (B) provide:

All proceedings, records and materials prepared in connection with the reviews provided for in § 36–445, *including all peer reviews* of individual health care providers practicing in and *applying to practice* in hospitals ... *and the record of* such reviews, shall be confidential and shall not be subject to discovery.

(Emphasis added.)

Specific reference to the application process is also found in § 36–445.02 which provides immunity to individuals involved in the peer review process:

b. No hospital ... and no individual involved in carrying out review or disciplinary duties or functions of a hospital ... pursuant to § 36–445 may be liable in damages *to any person who is denied the privilege to practice in a hospital*

... or whose privileges are suspended, limited or revoked.

(Emphasis added.)

Despite these express references to the application process, Edison urges this court to hold that peer review refers only to retrospective review of care provided by physicians already practicing in hospitals.

■■ We cannot accept such a narrow construction. Section 36–445 does not include such limiting language. The rules of statutory construction require that statutes be read so that no portion of a statute is rendered superfluous or void. *State v. Superior Court,* 113 Ariz. 248, 550 P.2d 626 (1976).

The statute speaks of review of the "nature, quality and necessity of the care provided and the *preventability of complications and deaths occurring in the hospital.*" (Emphasis added.) This type of review includes investigation of the qualifications of physicians seeking to provide medical services at a hospital as well as review of medical services already provided. *Misevch,* 113 Ariz. at 38, 545 P.2d at 962; *see also Johnson v. Misericordia Comm. Hosp.,* 99 Wis.2d 708, 301 N.W.2d 156 (1981).

Edison's untenable position would encourage full candor when peer review committees evaluate care already provided, but would discourage full candor when credentials committees review the qualifications of physicians seeking to provide medical care. The narrow interpretation urged by Edison has been specifically rejected in California. *Mt. Diablo Hosp. Dist. v. Superior Court,* 183 Cal.App.3d 30, 227 Cal.Rptr. 790 (1986).

Therefore, because the statutes expressly refer to the confidentiality of peer review of applications for staff privileges and because of the public interest in such confidentiality, we hold that the peer review privilege protects the credentialing process.

■■ We note, though, that evidence possessed by the credentials committee which is not otherwise privileged may be discovered; the mere fact that a committee has obtained evidence does not render that

evidence privileged if it was not previously privileged. *Lipschultz v. Superior Court,* 128 Ariz. 16, 623 P.2d 805 (1981). To hold otherwise would result in such evidence being more protected than it was before being obtained by the committee. *Lipschultz.* Personnel, administrative and other hospital records regarding Dr. Blumberg which do not contain references to proceedings before medical investigative committees are not immune from discovery. *Schulz v. Superior Court,* 66 Cal. App.3d 440, 136 Cal.Rptr. 67 (1977).

While the internal workings and deliberative processes of regularly constituted committees are immune from discovery, the *effect* of the proceedings is not:

> The goal and fundamental purpose of the statute is open discussion during committee investigations. Open discussion is not inhibited by permitting discovery of the *effect* of the committee proceedings.

*Anderson v. Breda,* 103 Wash.2d 901, 907, 700 P.2d 737, 741 (1985) (emphasis added).

Therefore, Edison can obtain information she needs to prove Humana's actual or constructive knowledge of Dr. Blumberg's shortcomings from other sources without compromising the privilege. The investigations regarding Dr. Blumberg's applications for staff privileges at various hospitals, as well as the applications, are privileged under the Act.

### 6. *Standing of Dr. Blumberg and Humana*

The trial court ruled that Dr. Blumberg and Humana had no standing to contest the subpoenas duces tecum served upon the nonparty hospitals. Generally, a party may not challenge a discovery order directed to a nonparty witness, the right to object being reserved solely for the witness subpoenaed. *MacDonald v. Hyder,* 12 Ariz.App. 411, 471 P.2d 296 (1970). However, if a party can "make claim to some personal right or privilege in respect to the subject matter of a subpoena duces tecum directed to a non-party witness," the party may contest the subpoena. *MacDonald,* 12 Ariz.App. at 417, 471 P.2d at 302; *Lipschultz,* 128 Ariz. at 19, 623 P.2d at 808.

In *Lipschultz,* the plaintiffs sued two doctors for medical malpractice and subpoenaed the Board of Medical Examiners (BOMEX). BOMEX claimed the subpoena dealt with production of privileged material pursuant to A.R.S. § 32–1451.01, which provides that information and records received and kept by BOMEX in its malpractice investigations shall not be available to the public. After the trial court ordered BOMEX to provide plaintiffs with certain materials, the doctors filed a special action petition in our supreme court. That court found no legislative intent that the privileges of A.R.S. § 32–1451.01(C) and (E) could be invoked only by BOMEX, and held that the doctors had a personal right to a privilege concerning the subpoenaed materials because the underlying purpose of the privilege would be defeated if they were not permitted to assert it. Consequently, the doctors had standing to invoke the privilege.

Similarly, Dr. Blumberg and Humana have a personal right to a privilege concerning the subpoenaing of Dr. Blumberg's credentials file. The entire peer review process would be crippled if production were required, and the underlying purpose of the privilege would be defeated if the privilege could not be asserted by those subpoenaed. Furthermore, the legislature has not stated that the privilege can be invoked only by the person holding the records. Therefore, Dr. Blumberg and Humana have standing to object to the subpoenaing of information from the nonparty hospitals.

### 7. *Conclusion*

A cause of action against a hospital for negligently supervising a staff physician is subject to Arizona's antiabrogation clause. The peer review act establishes an evidentiary privilege merely regulating an action for negligent supervision, rather than abrogating the right to bring the action.

Arizona's peer review act does not infringe upon the rule-making power of the Arizona Supreme Court because the Act is a reasonable and workable legislative rule merely supplementing Arizona Supreme Court rules. Finally, both a party-physi-

cian and a party-hospital have standing to object to the subpoenaing of a physician's credentials files from nonparty hospitals.

We therefore grant special action relief and reverse the trial court's order compelling production. We order the court to deny discovery of all otherwise privileged documents which would be subject to discovery under the trial court's order, including Dr. Blumberg's applications for staff privileges at Humana and the nonparty hospitals.

GREER and GRANT, JJ., concur.