BROWN, Justice.
The question presented by these petitions for the writ of mandamus is whether certain records of Vaughan Regional Medical Center, Inc. (“Vaughan Regional”), relating to a staff physician are privileged under state law and, therefore, not subject to discovery. The trial judge held that some of the records were discoverable, but that some of them were not discoverable *375 because, he said, the discovery request was “overly broad.” To the extent that the trial court ordered that the records were discoverable, we conclude that he erred. Therefore, we grant the petitions of Dr. F.H. Qureshi, Central Alabama Orthopedic, and Vaughan Regional for a writ of mandamus directing the trial judge to vacate his orders compelling discovery.
Stacy Larrimore sued Dr. Qureshi and Central Alabama Orthopedic, alleging medical malpractice on the part of Dr. Qureshi. Specifically, Larrimore alleged that Dr. Qureshi had breached the applicable standard of care by improperly setting her broken left ankle and by failing to adequately and properly render postsurgical treatment regarding her broken ankle. Larrimore also sued Vaughan Regional, alleging that it had failed to render adequate postoperative care to her and that it had negligently or wantonly permitted Dr. Qureshi to perform the kind of procedures and treatments he had utilized on her. Additionally, Larrimore alleged that Vaughan Regional had been negligent in hiring and credentialing Dr. Qureshi.
On January 21,1998, Larrimore issued a notice of deposition to Vaughan Regional. The notice sought, pursuant to Rule 30(b)(6), Ala.R.Civ.P., to have a representative of Vaughan Regional testify regarding several subjects, including Dr. Qure-shi’s qualifications, training, education, and board certification in the field of orthopedic surgery. The notice further sought any investigations or evaluations of Dr. Qureshi and his qualifications, training, education, and board certification in the field of orthopedic surgery conducted or received by Vaughan Regional before Dr. Qureshi was granted staff privileges. In addition, pursuant to Rule 30(b)(5), Ala. R.Civ.P., the notice asked that Vaughan Regional produce certain documents at this deposition, including the following:
“3. All documents which evidence, or relate or pertain in any way to, the business or contractual relationship between Vaughan Regional Medical Center, Inc., and Dr. F.H. Qureshi, including, without limitation, the following:
[[Image here]]
“h. documents evidencing, or pertaining in any way to, any investigations or evaluations of Dr. Qureshi and his qualifications, training, education and board certification in the field of ortho-paedic surgery conducted or received by VRMC before it entered into a contractual relationship with Dr. Qureshi;
“i. documents evidencing, or pertaining in any way to, Dr. Qureshi’s qualifications, training, education and board certification in the field of orthopaedic surgery;
“j. correspondence between VRMC and the American Board of Orthopaedic Surgeons, and/or documents received by VRMC from the American Board of Or-thopaedic Surgeons, pertaining in any way to Dr. Qureshi; and
“k. correspondence between VRMC and any other institution or hospital, or documents received by any other institution or hospital, where Dr. Qureshi has practiced medicine or received training, pertaining in any way to Dr. Qureshi.”
Vaughan Regional filed an objection to producing documents that would be responsive to Request 3(h)-(k), claiming that the documents encompassed by that request were privileged, pursuant to § 22-21-8, Ala.Code 1975. Thereafter, Larri-more filed a motion to compel Vaughan Regional to comply with a discovery order the trial court had entered on September 10, 1997. On June 22, 1998, Vaughan Regional filed a response to Larrimore’s motion to compel. Included as part of that response was the affidavit of Dr. Lotfi Bashir,[1] who was then serving as chairman of Vaughan Regional’s credentialing com *376 mittee. In the affidavit, Dr. Bashir stated that the documents that would be responsive to Request 3(h)-(k) were maintained as part of Vaughan Regional’s credentialing file on Dr. Qureshi. Dr. Bashir further stated that it was essential that the materials gathered by the hospital be kept confidential, so as to ensure that physicians applying for hospital staff privileges would provide complete and accurate information about their qualifications. Moreover, Dr. Bashir stated, if the information did not remain confidential then “physicians and health care institutions from whom materials are requested in the credentialing process would be less inclined to provide frank and open criticisms of physician applicants where warranted.”
On July 9, 1998, the trial judge entered an order on Larrimore’s motion to compel, stating in pertinent part:
“The Court finds that the motion to compel is due to be and the same is hereby granted as to items L, j., and k. It appears that all of those documents would have been furnished to the Defendant from outside sources or are otherwise discoverable. This Court finds that request 3.(h) is overly broad. The Plaintiff is entitled to documents received from outside sources including documents received from the Defendant, Dr. Qureshi. The Plaintiff is not entitled to documents created by the Defendant, Vaughan Regional Medical Center in its evaluation or credentialing process.”
Vaughan Regional then moved for a protective order holding that the documents referenced in the court’s July 9, 1998, order did not have to be produced. See Ex parte Reynolds Metals Co., 710 So.2d 897 (Ala.1998). On September 10, 1998, the trial court denied Vaughan Regional’s request for a protective order.
On October 22, 1998, Vaughan Regional petitioned for the writ of mandamus, asking this Court to hold the documents sought by Request 3(i)-(k) privileged under § 22-21-8, Ala.Code 1975. On October 23, 1998, Dr. Qureshi and Central Alabama Orthopedic filed their own petition for the writ of mandamus, seeking similar relief. On December 7, 1998, Stacy Larrimore filed a response in opposition to these two petitions. Additionally, Larrimore filed what has been docketed as a cross-petition for the writ of mandamus, asking this Court to hold that Request 3(h) was not overly broad and to order the trial court to direct Vaughan Regional to produce all documents responsive to that request.
At issue in the instant cases is the meaning of § 22-21-8, Ala.Code 1975. This section, entitled “Confidentiality of accreditation, quality assurance credentialing materials, etc.,” states:
“(a) Accreditation, quality assurance and similar materials as used in this section shall include written reports, records, correspondence, and materials concerning the accreditation or quality assurance or similar function of any hospital, clinic, or medical staff. The confidentiality established by this section shall apply to materials prepared by an employee, advisor, or consultant of a hospital, clinic, or medical staff and to materials prepared by an employee, ad-visor or consultant of an accrediting, quality assurance or similar agency or similar body and to any individual who is an employee, advisor or consultant of a hospital, clinic, medical staff or accrediting, quality assurance or similar agency or body.
“(b) All accreditation, quality assurance credentialing and similar materials shall be held in confidence and shall not be subject to discovery or introduction in evidence in any civil action against a health care professional or institution arising out of matters which are the subject of evaluation and review for accreditation, quality assurance and similar functions, purposes, or activities. No person involved in preparation, evaluation or review of accreditation, quality assurance or similar materials shall be permitted or required to testify in any *377 civil action as to any evidence or other matters produced or presented during the course of preparation, evaluation, or review of such materials or as to any finding, recommendation, evaluation, opinion, or other action of such accreditation, quality assurance or similar function or other person involved therein. Information, documents, or records otherwise available from original sources are not to be construed as being unavailable for discovery or for use in any civil action merely because they were presented or used in preparation of accreditation, quality assurance or similar materials nor should any person involved in preparation, evaluation, or review of such materials be prevented from testifying as to matters within his knowledge, but the witness testifying should not be asked about any opinions or data given by him in preparation, evaluation, or review of accreditation, quality assurance or similar materials.”
This Court recently addressed this same issue in Ex parte Krothapalli, 762 So.2d 836 (Ala.2000). We wrote:
“In construing a statute, we must ascertain and give effect to the intent of the Legislature as that intent is expressed through the language of the statute. See BP Exploration & Oil, Inc. v. Hopkins, 678 So.2d 1052, 1054 (Ala.1996). The intent of the Legislature in adopting a statute may be gleaned from considering the language used, the reason and necessity for the statute, and the goals the Legislature sought to accomplish. Id. Section 22-21-8 was enacted as Act No. 81-801, Ala. Acts 1981. The title to that Act reads: ‘To provide for the confidentiality of all written materials and activities concerning the accreditation, quality assurance, or similar function of any hospital, clinic, or medical staff.’
“In construing this statute, we adopt the reasoning of the Florida Supreme Court and the South Carolina Supreme Court in the following cases, in which those courts construed peer-review statutes substantially similar to § 22-21-8.
“In Cruger v. Love, 599 So.2d 111 (Fla.1992), the Florida Supreme Court, construing Florida’s peer-review statute, Fla. Stat. Ann. § 766.101(5) (1989), stated:
“ ‘The Florida Legislature enacted these peer review statutes in an effort to control the escalating cost of health care by encouraging self-regulation by the medical profession through peer review and evaluation. In order to make meaningful peer review possible, the legislature provided a guarantee of confidentiality for the peer review process....
[[Image here]]
“ ‘... While we recognize[ ] ... that the discovery privilege [impinges] upon the rights of litigants to obtain information helpful or even essential to their cases, we assume[ ] that the legislature balanced that against the benefits offered by effective self-policing by the medical community.
“ ‘We hold that the privilege provided by [the peer-review statutes] protects any document considered by the committee or board as part of its decision-making process. The policy of encouraging full candor in peer review proceedings is advanced only if all documents considered by the committee or board during the peer review or credentialing process are protected. Committee members and those providing information to the committee must be able to operate without fear of reprisal. Similarly, it is essential that doctors seeking hospital privileges disclose all pertinent information to the committee. Physicians who fear that information provided in an application might someday be used against them by a third party will be reluctant to fully detail matters that the committee should consider.’
“599 So.2d at 113-14. (Citation omitted.)
*378 “Similarly, the South Carolina Supreme Court, in McGee v. Bruce Hosp. System, 312 S.C. 58, 489 S.E.2d 257 (1993), explained:
“‘The overriding public policy of the confidentiality statute is to encourage health care professionals to monitor the competency and professional conduct of their peers to safeguard and improve the quality of patient care. The underlying purpose behind the confidentiality statute is not to facilitate the prosecution of civil actions, but to promote complete candor and open discussion among participants in the peer review process....
[[Image here]]
“ ‘We find that the public interest in candid professional peer review proceedings should prevail over the litigant’s need for information from the most convenient source.’
“312 S.C. at 61-62, 439 S.E.2d at 259-60. (Citations omitted.)
“It seems clear to us, as it did to the Supreme Courts of Florida and South Carolina, that the purpose of a peer-review statute is to encourage full candor in peer-review proceedings and that this policy is advanced only if all documents considered by the committee or board during the peer-review or ereden-tialing process are protected. In the title to Act No. 81-801, the Legislature stated the purpose of the Act as being ‘[t]o provide for the confidentiality of all written materials and activities concerning the accreditation, quality assurance, or similar function of any hospital, clinic, or medical staff.’ Given the broad language used by the Legislature in the title to this Act, we conclude that the documents the plaintiff seeks from the two hospitals are privileged. The information submitted to this Court under seal includes only Dr. Krothapalli’s applications for staff privileges over the past several years. These documents clearly fall under the protection of § 22-21-8.
“We note that § 22-21-8(b) provides: “ ‘Information, documents, or records otherwise available from original sources are not to be construed as being unavailable for discovery or for use in any civil action merely because they were presented or used in preparation of accreditation, quality assurance or similar materials nor should any person involved in preparation, evaluation, or review of such materials be prevented from testifying as to matters within his knowledge, but the witness testifying should not be asked about any opinions or data given by him in preparation, evaluation, or review of accreditation, quality assurance or similar materials.’
“Accordingly, § 22-21-8 does not protect information if it is obtained from alternative sources. Hence, a plaintiff seeking discovery cannot obtain directly from a hospital review committee documents that are available from the original source, but may seek such documents from the original source. Therefore, the trial court erred in ordering that these documents from the two hospitals be turned over to the plaintiff.”
762 So.2d at 838-39. (Emphasis supplied.)
The trial court ordered Vaughan Regional to produce all documents responsive to Request 3(i)-(k) that had been furnished to the hospital by outside sources. Based on the decision in Ex parte Krothapalli, we conclude that the trial court erred. We note, however, that Krothapalli allows the discovery of these documents from their original sources.
The facts before us, however, differ slightly from those in Krothapalli. Larri-more argues that because she has asserted a claim against Vaughan Regional alleging the negligent hiring and/or negligent credentialing of Dr. Qureshi she is entitled to receive these documents from Vaughan Regional, rather than from the original sources. Larrimore also argues that *379 § 22-21-8 is unconstitutional in that it bars her from prosecuting a claim against Vaughan Regional for the injuries she sustained as a result of the hospital’s alleged negligence in hiring and/or credentialing Dr. Qureshi.
Article I, § 10, of the Constitution of Alabama of 1901 provides that “no person shall be barred from prosecuting or defending before any tribunal in this state, by himself or counsel, any civil cause to which he is a party.” Likewise, Article I, § 13, provides that “all courts shall be open; and that every person, for any injury done him, in his lands, goods, person, or reputation, shall have a remedy by due process of law; and right and justice shall be administered without sale, denial, or delay.”
Virtually the same issue was addressed by the Arizona Court of Appeals in Humana Hospital Desert Valley v. Superior Court, 154 Ariz. 396, 742 P.2d 1382 (App. 1987). There, Humana Hospital was sued for negligent supervision of one of its physicians. The plaintiff, Marily Edison, sought discovery of the physician’s application for staff privileges and any records reflecting the hospital’s investigation into his application for staff privileges. The hospital objected to producing these documents, maintaining that Arizona’s peer-review privilege protected files of its credentials committee. The trial court denied Humana and the defendant physician’s motion to quash discovery of the hospital peer-review documents; Humana and the defendant physician appealed.
On appeal, Edison argued that preventing discovery of the hospital peer-review documents would effectively abrogate her claim for negligent supervision, in violation of her rights under the Arizona Constitution. The Arizona Court of Appeals rejected Edison’s argument, stating:
“In the underlying action, Edison is suing Humana for negligently allowing Dr. Blumberg to practice on its staff and for negligently supervising Dr. Blum-berg. To prove a negligent supervision theory, a plaintiff must establish that the hospital knew or should have known that a physician was not competent to provide certain care and that the hospital’s failure to supervise the physician caused injury to the plaintiff. Tucson Med. Center v. Misevch, 113 Ariz. 34, 36, 545 P.2d 958, 960 (1976).
“Contrary to her assertion, Edison is left with ample alternatives to prove her negligent supervision theory against Hu-mana without obtaining access to privileged information. Information which originated outside the peer review process is not subject to the privilege and, if otherwise admissible, could be used to prove Edison’s case. Shelton v. Morehead Mem. Hosp., 318 N.C. 76, 347 S.E.2d 824 (1986). In Shelton, the court held that information which is available from original sources is not immune from discovery or use at trial merely because it was used by a medical review committee. See also Jenkins v. Wu, 102 Ill.2d 468, 82 Ill.Dec. 382, 468 N.E.2d 1162 (1984); Good Samaritan Hosp. Ass’n v. Simon, 370 So.2d 1174 (Fla. App.1979). Such original sources include court records about previous malpractice claims and administrative records or testimony about a physician’s education and training.
“A plaintiff can also discover a hospital’s general credentialing or review procedure policies. A.R.S. § 36-445.01(B) provides that representatives of a hospital may testify whether peer review was conducted with regard to the subject matter being litigated. A plaintiff also has access to medical records available pursuant to a patient’s consent. Finally, a plaintiff can retain experts to give opinions regarding all of the above matters. Edison apparently found an expert who has expressed opinions in support of her claims. Therefore, neither the Act nor our holding today bars a malpractice plaintiff from proving a negligent supervision claim against a hospital.
*380 “Moreover, if this court were to eliminate the peer review privilege, it would negate an important state interest. See Morse v. Gerity, 520 F.Supp. 470, 472 (D.Conn.1981). Arizona courts have recognized that the confidentiality of peer review committee proceedings is essential to achieve complete investigation and review of medical care....
“These important policy considerations mandate our protection of the peer review privilege. Because plaintiff is not deprived of her ability to bring a negligent supervision action, and because of the overriding public interest in candid professional peer review, we hold' that the peer review act merely regulates a plaintiffs claim against a hospital for negligent supervision, and does not violate Ariz. Const. Art. 18 § 6.”
154 Ariz. at 400, 742 P.2d at 1386.
In construing § 22-21-8, we adopt the reasoning of the Arizona Court of Appeals. Larrimore’s right to sue Vaughan Regional for the negligent hiring and/or credentiahng of Dr. Qureshi has not been abrogated. Neither our decision in Kro-thapalli nor our holding here today prevents Larrimore from obtaining documents that originated from sources other than Vaughan Regional’s credentialing committee. Indeed, from the record before us, it appears that Larrimore has already obtained portions of this outside information.
We conclude that the documents at issue in these cases are privileged, under Alabama’s peer-review statute, § 22-21-8, Ala.Code 1975. Accordingly, the petition of Dr. Qureshi and Central Alabama Orthopedic, as well as the petition of Vaughan Regional Medical Center, are granted. The cross-petition of Stacy Lar-rimore is denied. The trial judge is directed to vacate his order requiring that Vaughan Regional provide documents responsive to Request S(i)-(k) that were received from outside sources.
1980160 — PETITION GRANTED; WRIT ISSUED.
1980179 — VAUGHAN REGIONAL’S PETITION GRANTED AND WRIT ISSUED; STACY LARRIMORE’S CROSS-PETITION DENIED.
HOOPER, C.J., and MADDOX, HOUSTON, COOK, LYONS, JOHNSTONE, and ENGLAND, JJ„ concur.
SEE, J., recuses himself.

. We note that Dr. Bashir’s given name was spelled "Lofti” at several places in the record, including his affidavit. However, Dr. Bashir corrected the spelling of his name before executing the affidavit.