70 P.3d 444

SUN HEALTH CORPORATION d/b/a Boswell Memorial Hospital and d/b/a Walter O. Boswell Memorial Hospital, Petitioner,

v.

The Honorable Robert D. MYERS, Judge of the Superior Court of The State of Arizona, in and for the County of Maricopa, Respondent Judge,

Edwin S. North, surviving spouse of Beverly North, on his own behalf and on behalf of the natural children of Beverly North, namely Daniel E. North, Lawrence M. North, Gary A. North, and Sandra J. Hix, Real Parties in Interest.

No. 1–CA–SA 03–0018.

Court of Appeals of Arizona, Division 1, Department C.

May 13, 2003.

Redesignated as Opinion and Amended June 12, 2003.

---

* Due to a vacancy and a recusal on this court at the time this case was decided, the Honorable Robert J. Corcoran, Justice (retired) and the Honorable Joseph H. Howard, a judge of the Arizona Court of Appeals, Division Two, were designated to participate in this case under Article 6, Section 3 of the Arizona Constitution.

Shughart Thomson & Kilroy, P.C., by Calvin L. Raup and Rudolph J. Gerber, Michael R. Golder, Phoenix, Attorneys for Petitioner.

Broening Oberg Woods Wilson & Cass, P.C., by James R. Broening and Lora B. Sanders, Phoenix, Attorneys for Petitioner Fernando Casses, M.D.

Sanders & Parks, P.C., by Winn L. Sammons and Robin E. Burgess, Phoenix, Attorneys for Petitioner Kevin Zarmer, M.D.

Leonard, Clancy & McGovern, P.C., by James J. Leonard, Jr. and Kenneth P. Clancy, Thomas P. McGovern, Tyrone Mitchell,

Brian T. Leonard, Phoenix, Attorneys for Real Parties in Interest.

Coppersmith Gordon Schermer Owens & Nelson, P.L.C., by Andrew S. Gordon, Phoenix, Attorneys for Amicus Curiae Arizona Hospital and Healthcare Association.

Snell & Wilmer L.L.P., by Barry D. Halpern and Stephanie V. Hackett, Phoenix, Attorneys for Amicus Curiae Arizona Medical Association.

## OPINION

LANKFORD, Judge.

¶ 1 This special action by Sun Health Corporation ("the hospital") seeks to prevent the disclosure of certain hospital documents.[1] The documents involved are the statement of reasons the hospital suspended the staff privileges of Dr. Casses and medical charts submitted to the Arizona Board of Medical Examiners ("BOMEX") in connection with his suspension.[2] The hospital also seeks protection from having to respond to two requests for admission. Except for the medical charts of Plaintiff's decedent, the requested information is privileged. Accordingly, the superior court erred in ordering disclosure. For the reasons that follow, we accept jurisdiction and grant relief in part.

¶ 2 "Special action jurisdiction is appropriate when there is no equally plain, speedy, and adequate remedy by way of appeal." *State ex rel. Pennartz v. Olcavage,* 200 Ariz. 582, 585, ¶ 8, 30 P.3d 649, 652 (App.2001). Because an appeal offers no adequate remedy for the prior disclosure of privileged information, special action jurisdiction is proper to determine a question of privilege. *Yuma Reg'l Med. Ctr. v. Superior Court,* 175 Ariz. 72, 74, 852 P.2d 1256, 1258 (App.1993). The privilege issues involved here warrant the exercise of jurisdiction.

¶ 3 The pertinent facts are as follows. Plaintiff brought a wrongful death action against the hospital. Plaintiff alleges that Dr. Casses negligently performed heart surgery on Plaintiff's wife, causing her death.

¶ 4 The hospital conducted a peer review and ultimately suspended the doctor's staff privileges. Health care providers must notify BOMEX when a doctor's staff privileges are suspended. Ariz.Rev.Stat. ("A.R.S.") § 32–1451(B) (Supp.2002). Along with the notification, health providers must also submit to BOMEX a general statement of reasons for the suspension and the patients' medical charts. *Id.* The hospital submitted these documents to BOMEX concerning Dr. Casses' suspension.

¶ 5 Plaintiff sought the information via requests for documents and requests for admissions. Plaintiff not only requested all of the documents that the hospital sent to BOMEX regarding Dr. Casses, but also asked the hospital to admit that one of the cases reviewed by its peer review committee was Plaintiff's decedent, and that the hospital, through its committees, knew of complaints against Dr. Casses.

¶ 6 The hospital refused to disclose the statements and declined to answer the requests for admissions based on the statutory peer review privilege conferred by A.R.S. §§ 32–1451.01 (Supp.2002) and 36–445.01 (Supp.2002). Plaintiff filed a motion to compel. After a hearing, the superior court granted Plaintiff's motion and ordered the hospital to disclose the requested information. The hospital's special action asks us to vacate the superior court's order.

¶ 7 Except for the decedent's medical charts, and possibly the complaints against Dr. Casses, the information requested is privileged. Information and documents prepared in connection with a peer review investigation are privileged. A.R.S. § 36–445.01.[3]

---

1. Plaintiff brought a medical malpractice action against various defendants, including petitioner, for wrongful death of his wife Beverly North.·

2. Although the record is not clear whose charts Plaintiff seeks, it appears that he is seeking the charts of the sixteen patients involved in the BOMEX investigation of Dr. Casses. The request for production asks for those "chart numbers" considered by BOMEX that led to Dr. Casses' suspension.

3. A.R.S. § 36–445 (1993) imposes on the medical governing bodies the duty to conduct peer review evaluations. Section 36–445.01 established the confidentiality of the information created under section 445.

So are a hospital's communications to BO-MEX relating to the suspension of staff privileges of a doctor. The hospital must notify BOMEX of such a suspension and include "a general statement of the reasons, including patient chart numbers, that led the health care institution to take the action." A.R.S. § 32–1451(B). "All proceedings, records and materials prepared in connection with the reviews provided for in § 36–445 ... are confidential and are not subject to discovery...." A.R.S. § 36–445.01. Furthermore, information received by the board "as a result of the investigation procedure ... are not available to the public." A.R.S. § 32–1451.01(C). Finally, A.R.S. § 32–1451.01(E) provides in part:

> Hospital records, medical staff records, medical staff review committee records and testimony concerning these records and proceedings related to the creation of these records are not available to the public, shall be kept confidential by the board and are subject to the same provisions concerning discovery and use in legal actions as are the original records in the possession and control of hospitals, their medical staffs and their medical staff review committees.

¶ 8 Subsections C and E work together; the latter is an exception to the former. In *Lipschultz v. Superior Court*, 128 Ariz. 16, 18–19, 623 P.2d 805, 807–08 (1981), the supreme court explained the relationship between subsections C and E.[4] Subsection C establishes the general rule that documents submitted to BOMEX " 'as a result of the investigation procedure ... ' are absolutely privileged." *Id.* at 19, 623 P.2d at 808. Subsection E creates an exception for material not privileged in its original form. "Factual information not privileged in the 'possession and control' of the appropriate medical unit, does not become privileged because the information is transmitted to the Board." *Id.*

(citing *Tucson Med. Ctr., Inc. v. Misevch*, 113 Ariz. 34, 545 P.2d 958 (1976)).

¶ 9 The statutory privilege furthers important public policy. The "confidentiality of peer review committee proceedings is essential to achieve complete investigation and review of medical care." *Humana Hosp. Desert Valley v. Superior Court*, 154 Ariz. 396, 400, 742 P.2d 1382, 1386 (App.1987). Because " '[r]eview by one's peers within a hospital is not only time consuming, unpaid work, [and] likely to generate bad feelings and result in unpopularity,' " it is imperative to preserve the peer review privilege. *Id.* (quoting *Scappatura v. Baptist Hosp.*, 120 Ariz. 204, 210, 584 P.2d 1195, 1201 (App. 1978)).

■ ¶ 10 With these principles in mind, we review each of Plaintiff's requests. Plaintiff first seeks the general statement of reasons for the suspension. This statement is expressly privileged by A.R.S. § 32–1451.01. A.R.S. § 32–1451(B) requires that if a hospital suspends a doctor's staff privileges, it must submit to BOMEX the general statement of reasons that led to the doctor's suspension. Information received and kept by the board as a result of an investigation is privileged. A.R.S. § 32–1451.01(C). The statement of reasons meets this criteria, and is therefore privileged and not discoverable.

■ ¶ 11 Plaintiff also seeks the patient charts submitted to BOMEX.[5] A.R.S. § 32–1451.01(C) protects patient records from discovery. However, the character of an item as privileged or non-privileged does not change simply because it was submitted to BOMEX. A.R.S. § 32–1451.01(E); *Lipschultz*, 128 Ariz. at 19, 623 P.2d at 808. The patients' privilege stems from the physician-patient relationship. The physician-patient privilege belongs to the patient. *State v. Dumaine*, 162 Ariz. 392, 406, 783 P.2d 1184, 1198 (1989). By waiving the privilege, a patient's medical charts become non-privi-

---

4. While *Lipschultz* refers to section E as an exception, sections C and E arguably address different records. Section C refers to patients' records while E refers to hospital records. Although, section 1451.01 has been amended after *Lipschultz*, the changes are minor and the essence of subsections C and E remain the same.

5. Plaintiff seeks the charts themselves and does not request the names or identities of the patients. He concedes that disclosure of the identities of the other patients would violate the doctor-patient privilege.

leged and that character does not change by their submission to BOMEX. Therefore, only the medical charts of those patients who waive the physician-patient privilege are discoverable. Although the physician-patient privilege belongs to the patient, the privilege continues after death. *Id.;* 1 John W. Strong, *McCormick on Evidence* § 102, at 411 (5th ed.1999). However, heirs or a decedent's next of kin may waive the decedent's privilege. *Id.* Because Plaintiff waived the decedent's physician-patient privilege, her medical charts are discoverable.[6]

¶ 12 Plaintiff also sought an admission that Plaintiff's case was one of the reasons resulting in the suspension of Dr. Casses. A request for admission is a discovery device. Ariz. R. Civ. P. 26(a). However, privileged information is not discoverable. Ariz. R. Civ. P. 26(b). The statute does not specifically state whether the privilege applies to requests for admissions. The privilege clearly extends to information sought through interrogatories. *See Yuma Reg'l,* 175 Ariz. at 75–77, 852 P.2d. at 1259–61 (names of the persons present at a review proceeding, the list of written or documentary items submitted to the committee, and a request for an in camera review of items alleged to be privileged violates the peer review privilege). We determine that the privilege extends to the information contained in the documents and is not limited to the documents themselves.

¶ 13 To determine the scope of the privilege, the threshold question is to determine the purpose of the request. *Id.* at 75, 852 P.2d at 1259. A subpoena whose sole purpose is to obtain privileged peer review information is prohibited under A.R.S. § 36–445.01. *Id.* If the information is to "indirectly discover the nature of the testimony, ..." otherwise not directly obtainable, then the information is privileged. *Id.* In *Yuma Regional,* the plaintiff sought the names of the participants of a peer review proceeding. *Id.* We determined that by merely revealing the peer review participants, we could ipso facto reveal what was discussed at the proceedings. *Id.* Thus, the identity of the participants in a peer review proceeding is not

discoverable if the sole purpose for identifying them is to discover *what* was discussed in the peer review proceeding. *Id.* In this case, disclosing what the hospital considered in suspending Dr. Casses would reveal privileged information. Therefore, the peer review privilege protects the hospital from answering the request for admission.

¶ 14 However, Plaintiff sought an admission that the hospital was aware of complaints about Dr. Casses. On this record, we can not determine whether this information is privileged. The discoverability of this information depends on whether the hospital became aware of Dr. Casses complaints through *peer review* committees or otherwise. Like the request for admitting whether the peer review committee reviewed a specific case, knowledge of other cases obtained by the *reviewing* committees and considered in the *peer review process* is privileged. However, the hospital's awareness of complaints against Dr. Casses by other means is not protected from a request for admission. Plaintiff's request for admission asked whether the hospital "through its committees" was aware of complaints about Dr. Casses. This request does not clearly differentiate the source of the hospital's knowledge. The superior court may, in further proceedings, act to protect the privilege by determining whether the existing request implicates the privilege and allowing or limiting the request or protecting the hospital from it altogether.

¶ 15 We now consider whether protecting the requested information abrogates Plaintiff's right of action. When the superior court ordered disclosure, it said that to hold otherwise would abrogate Plaintiff's right to bring a negligent credentialing suit against the hospital. However, this issue was resolved by *Humana,* a negligent credentialing case. 154 Ariz. at 399–400, 742 P.2d at 1385–86. We held that granting a motion to quash discovery of hospital peer review documents did not abrogate Plaintiff's right of action. *Id.* at 400, 742 P.2d at 1386.

¶ 16 The legislature does not deny a plaintiff's right to sue if it "leaves [ ] *reason-*

---

6. Plaintiff's counsel also represented another patient of Dr. Casses who also waived the physi-

cian-patient privilege. Those patient's charts are also discoverable.

*able alternatives or choices which will enable him or her to bring the action.*" *Id.* at 399, 742 P.2d at 1385 (emphasis in original) (quoting *Barrio v. San Manuel Div. Hosp.*, 143 Ariz. 101, 106, 692 P.2d 280, 285 (1984)). A plaintiff has reasonable alternative ways to obtain the information without seeking privileged information. *Id.* at 400, 742 P.2d at 1386. The plaintiff can seek information outside the review process and information from the original sources including court records of previous malpractice claims and administrative records or testimony about the physician's education and training. *Id.* A plaintiff can obtain discovery about the hospital's credentialing process and obtain his or her own medical records. Plaintiffs may also depose defendants and may retain experts to opine on any issues that may arise. *Yuma Reg'l,* 175 Ariz. at 75, 852 P.2d at 1259. Moreover, a plaintiff may obtain the date and place where a review proceeding occurred. *Id.* at 77, 852 P.2d at 1261. Because Plaintiff can pursue this action without the privileged information, discovery is not constitutionally mandated to preserve the cause of action.

¶ 17 Accordingly, we accept jurisdiction and grant relief in part.

CONCURRING: CECIL B. PATTERSON, JR., Presiding Judge and PHILIP HALL, Judge.