Facts
Troy Hopkins and his daughter, Charlotte Hopkins Hermann ("the Hopkinses"), together as business partners, operated a gasoline service station in Mobile, as a licensed motor fuel dealer for BP Exploration Oil, Inc. ("BP"),[1] until they closed their business in 1991. In 1986, the Hopkinses sued BP, alleging that BP had violated the Alabama Motor Fuel Marketing Act ("AMFMA"), Ala. Code 1975, § 8-22-1 et seq., because, they said, BP had "transferred" fuel from its wholesale level to its own company stations at a "transfer price" that was lower than the price at which BP sold gasoline to the independent dealer outlets like the one they owned.
In January 1995, BP moved for a summary judgment. BP argued that when it supplied gasoline to its own company-owned stations, it did not use a "transfer price" within the meaning of the AMFMA. BP also contended that, in any event, it did not violate the AMFMA because, it said, the AMFMA does not require integrated oil companies like BP to establish a transfer price.
The Hopkinses opposed BP's motion for a summary judgment. They contended that the AMFMA requires BP and other vertically integrated refiners to establish a transfer price for gasoline transferred to company-operated stations from their marketing unit.
The circuit court denied BP's motion, without an opinion. This Court granted BP permission to appeal from the denial of the summary judgment. See Rule 5, Ala.R.App.P.
 Issue1
Does the AMFMA, §§ 8-22-1 to -18, Ala. Code 1975, require that a refiner doing business in Alabama establish and maintain a "transfer price" as that term is used in the Act?
 Discussion
The purpose and intent of the AMFMA is to "encourage fair and honest competition, and to safeguard the public against the creation of monopolies or unfair methods of competition, in transactions involving the sale of, or offer to sell, or inducement to sell motor fuel in the wholesale and retail trades in this state." § 8-22-3; McGuire Oil Co. v. Mapco,Inc., 612 So.2d 417 (Ala. 1992); Star Service Petroleum Co.v. State, 518 So.2d 126 (Ala.Civ.App. 1986). As a federal district court has observed, "Alabama has an interest in preventing unfair and dishonest competition, monopolies, and price wars. . . . The [AMFMA] protects those interests and thereby protects both independent retailers . . . and the general consuming public." State ex rel. Galanos v. StarService Petroleum Co., 616 F. Supp. 429, 431 (S.D.Ala. 1985). In other words, the AMFMA prohibits a vertically integrated oil company like BP — which not only produces gasoline, and then distributes it at wholesale, but operates it own retail gasoline stations — from selling gasoline to independently owned and operated BP stations at prices that are higher than the prices at which the company transfers gasoline to company-owned and -operated stations. To this end Section8-22-7 states:
 "It shall be unlawful for any person engaged in commerce in this state to . . . transfer motor fuel to itself . . . at a transfer price that is below cost or lower than the price it charges a person who purchases for resale on the same day and at the same distribution level, within the same market area, where the effect is to injure competition."
Section 8-22-4(18) of the AMFMA defines "transfer price" as follows:
 "TRANSFER PRICE: Includes the price used by a person in transferring motor fuel to itself or an affiliate for resale at another marketing level. Such price shall be determined *Page 1054 
using standard, functional accounting procedures."
Section 8-22-5 requires disclosure of a transfer price:
 "All persons engaged in commerce in this state are required to disclose, upon request, their transfer prices on each grade of motor fuel transferred or sold to itself or an affiliate for resale at another marketing level of distribution. Such disclosure shall only be made to those persons affected by such transfer prices or in any legal proceedings arising from this chapter."
BP argues that because it has not established a transfer price between its marketing unit and its company-owned and -operated stations, then the provisions of the AMFMA do not apply to BP. The Hopkinses, on the other hand, argue that the AMFMA requires BP and other vertically integrated refiners to establish a transfer price for gasoline supplied to company-operated stations. Any other interpretation of the AMFMA, the Hopkinses argue, would defeat the chief objective of the AMFMA. We agree with the Hopkinses.
"In construing a statute, the intent of the legislature, as expressed in the statute, is ascertained and effectuated, and that intent may be gleaned from considering the language used, the reason and necessity for the act, and the goals sought to be accomplished." McGuire Oil Co. v. Mapco, Inc., 612 So.2d 417
(Ala. 1992). The court is to ascertain and give effect to the legislature's intent as expressed in the words of the statute.Commercial Standard Ins. Co. v. Alabama Surface MiningReclamation Comm'n, 443 So.2d 1245 (Ala.Civ.App. 1983), cert. denied, 467 U.S. 1242, 104 S.Ct. 3514, 82 L.Ed.2d 822 (1984). A statute susceptible to either of two opposing interpretations must be read in the manner that effectuates rather than frustrates the major purpose of the legislative draftsmen.Shapiro v. United States, 335 U.S. 1, 68 S.Ct. 1375,92 L.Ed. 1787 (1948).
If we were to adopt BP's argument that an integrated oil company like BP can decide for itself whether it will maintain a transfer price, then every integrated refiner operating retail outlets in Alabama could avoid AMFMA liability by refusing to establish a transfer price when transferring gasoline to company-operated stations. Such an interpretation of the AMFMA would defeat the purpose of that statute and would nullify and eliminate the statute entirely — it would be impossible to establish a violation of the AMFMA's prohibition of discriminatory pricing unless there are two prices to compare. In order to give a reasonable interpretation to the statute and to effectuate the legislative intent to "encourage fair and honest competition," we interpret the statute as requiring that an oil company furnishing gasoline both to independent stations and to company-operated stations establish a transfer price with respect to intracompany transfers of gasoline to its company-operated retail stations.
BP contends that an interpretation of the AMFMA that requires an oil company to establish a transfer price makes the statute unconstitutionally vague. We disagree. " 'For [the statute] to constitute a deprivation of due process, it must be "so vague and indefinite as really to be no rule or standard at all." ' " Friday v. Ethanol Corp., 539 So.2d 208 (Ala. 1988), quotingExxon Corp. v. Busbee, 644 F.2d 1030 (5th Cir. 1981), cert. denied, 454 U.S. 932, 102 S.Ct. 430, 70 L.Ed.2d 239 (1981). While BP construes the AMFMA differently from the way the plaintiff construes it, the fact that the parties have construed it differently does not render the statute unconstitutionally vague. As this Court recognized in Friday v.Ethanol Corp., supra, " '[t]hese attempts at statutory construction illustrate that [the statute] is . . . at least amenable to some sensible construction. Thus, it does alert the parties to the character of the prescribed conduct . . . and does amount to something more than "no rule . . . at all." ' " 539 So.2d at 213-14.
Accordingly, we conclude that the trial court properly denied BP's motion for summary judgment.
AFFIRMED.
MADDOX, HOUSTON, KENNEDY and COOK, JJ., concur.
[1] The parties agree that the name "BP Exploration Oil, Inc." correctly names the only defendant in this case. This avoids unnecessary confusion that might be caused if the parties had to trace several changes in the business when (1) Standard Oil Company of Ohio ultimately became known as "BP" and when (2) BP bought the marketing assets of Gulf Oil Company in eight southeastern states. The Hopkinses station had been a Gulf station. *Page 1055