762 So.2d 836 (2000)
Ex parte Radha K. KROTHAPALLI, M.D.
(Re Jeanne McCluskey, as administratrix of the estate of Robert Vernon McCluskey, deceased v. Dr. Radha K. Krothapalli).
1981354.
Supreme Court of Alabama.
February 18, 2000.
*837 Frank J. Stakely and Ben C. Wilson of Rushton, Stakely, Johnston & Garrett, P.A., Montgomery, for petitioner.
Kathryn H. Sumrall and Carrie D. Thornburgh of Garrison & Sumrall, P.C., Birmingham, for respondent.
MADDOX, Justice.
The question presented by this petition for the writ of mandamus is whether certain records of two hospitals relating to a staff physician are privileged under state law and, therefore, not subject to discovery. The trial judge held that the records were discoverable. We conclude that she erred. Therefore, we grant the petition for a writ of mandamus directing the trial judge to vacate her orders compelling discovery and to quash the subpoenas for the records.
Jeanne McCluskey, as personal representative of the estate of Robert V. McCluskey, filed a wrongful-death action against Dr. Radha Krothapalli, alleging medical malpractice on the part of Dr. Krothapallithat Dr. Krothapalli had breached the applicable duty of care by failing to adequately and properly treat Robert McCluskeyand that this breach had caused Robert McCluskey's death.
On February 19, 1999, the plaintiff filed notices of intent to serve subpoenas on the operators of two hospitals, Baptist Medical Center and Columbia Regional Medical Center.[1] Dr. Krothapalli is a member of the medical staff at both of these hospitals. Through the subpoenas, the plaintiff sought to obtain the "personnel files of Dr. Krothapalli, including, but not limited to, all contracts of employment and privileges between Dr. Krothapalli" and the two hospitals. On March 2, 1999, Dr. Krothapalli timely filed a motion to quash the subpoenas, or, alternatively, a motion for a protective order, based upon Alabama's peerreview statute, § 22-21-8, Ala.Code 1975, arguing that the records the plaintiff sought were not personnel files, but were instead credentialing files regarding Dr. Krothapalli's medical-staff privileges and that under the provisions of Ala.Code 1975, § 22-21-8(b),[2] those records were privileged *838 and therefore not subject to discovery.
The trial judge denied the motion to quash the subpoenas and ordered the two hospitals to deliver the personnel files directly to the trial court for an in camera inspection. Following an in camera review of the files, the trial judge issued an order stating that all the materials in the files were subject to subpoena by the plaintiff. Dr. Krothapalli filed this petition for a writ of mandamus directing the trial judge to vacate her orders and to quash the subpoenas.
Are the records reviewed by the trial judge credentialing records and, therefore, exempt from discovery by operation of § 22-21-8(b), Ala.Code 1975? We conclude that they are.
In construing a statute, we must ascertain and give effect to the intent of the Legislature as that intent is expressed through the language of the statute. See BP Exploration & Oil, Inc. v. Hopkins, 678 So.2d 1052, 1054 (Ala.1996). The intent of the Legislature in adopting a statute may be gleaned from considering the language used, the reason and necessity for the statute, and the goals the Legislature sought to accomplish. Id. Section 22-21-8 was enacted as Act No. 81-801, Ala. Acts 1981. The title to that Act reads: "To provide for the confidentiality of all written materials and activities concerning the accreditation, quality assurance, or similar function of any hospital, clinic, or medical staff."
In construing this statute, we adopt the reasoning of the Florida Supreme Court and the South Carolina Supreme Court in the following cases, in which those courts construed peer-review statutes substantially similar to § 22-21-8.
In Cruger v. Love, 599 So.2d 111 (Fla. 1992), the Florida Supreme Court, construing Florida's peer-review statute, Fla. Stat. Ann. § 766.101(5) (1989), stated:
"The Florida Legislature enacted these peer review statutes in an effort to control the escalating cost of health care by encouraging self-regulation by the medical profession through peer review and evaluation. In order to make meaningful peer review possible, the legislature provided a guarantee of confidentiality for the peer review process....
". . . .
"... While we recognize[ ] ... that the discovery privilege [impinges] upon the rights of litigants to obtain information helpful or even essential to their cases, we assume[ ] that the legislature balanced that against the benefits offered by effective self-policing by the medical community.
"We hold that the privilege provided by [the peer-review statutes] protects any document considered by the committee or board as part of its decision-making process. The policy of encouraging full candor in peer review proceedings is advanced only if all documents considered by the committee or board during the peer review or credentialing process are protected. Committee members and those providing information to the committee must be able to operate without fear of reprisal. Similarly, it is essential that doctors seeking hospital privileges disclose all pertinent information to the committee. Physicians who fear that information provided in an application might someday be used against them by a third party will be reluctant to fully detail matters that the committee should consider."
599 So.2d at 113-14. (Citation omitted.)
Similarly, the South Carolina Supreme Court, in McGee v. Bruce Hosp. System, 312 S.C. 58, 439 S.E.2d 257 (1993), explained:
"The overriding public policy of the confidentiality statute is to encourage health care professionals to monitor the competency and professional conduct of *839 their peers to safeguard and improve the quality of patient care. The underlying purpose behind the confidentiality statute is not to facilitate the prosecution of civil actions, but to promote complete candor and open discussion among participants in the peer review process....
". . . .
"We find that the public interest in candid professional peer review proceedings should prevail over the litigant's need for information from the most convenient source."
312 S.C. at 61-62, 439 S.E.2d at 259-60. (Citations omitted.)
It seems clear to us, as it did to the Supreme Courts of Florida and South Carolina, that the purpose of a peer-review statute is to encourage full candor in peer-review proceedings and that this policy is advanced only if all documents considered by the committee or board during the peer-review or credentialing process are protected. In the title to Act No. 81-801, the Legislature stated the purpose of the Act as being "[t]o provide for the confidentiality of all written materials and activities concerning the accreditation, quality assurance, or similar function of any hospital, clinic, or medical staff." Given the broad language used by the Legislature in the title to this Act, we conclude that the documents the plaintiff seeks from the two hospitals are privileged. The information submitted to this Court under seal includes only Dr. Krothapalli's applications for staff privileges over the past several years. These documents clearly fall under the protection of § 22-21-8.
We note that § 22-21-8(b) provides:
"Information, documents, or records otherwise available from original sources are not to be construed as being unavailable for discovery or for use in any civil action merely because they were presented or used in preparation of accreditation, quality assurance or similar materials nor should any person involved in preparation, evaluation, or review of such materials be prevented from testifying as to matters within his knowledge, but the witness testifying should not be asked about any opinions or data given by him in preparation, evaluation, or review of accreditation, quality assurance or similar materials."
Accordingly, § 22-21-8 does not protect information if it is obtained from alternative sources. Hence, a plaintiff seeking discovery cannot obtain directly from a hospital review committee documents that are available from the original source, but may seek such documents from the original source. Therefore, the trial court erred in ordering that these documents from the two hospitals be turned over to the plaintiff.
We conclude that the documents at issue in this case are privileged, under Alabama's peer-review statute, § 22-21-8, Ala.Code 1975. The petition for the writ of mandamus is granted. The trial judge is directed to vacate her orders dated April 6, 1999, and May 17, 1999, and to enter an order quashing the subpoenas to Baptist Medical Center and Columbia Regional Medical Center.
WRIT GRANTED.
HOUSTON, COOK, SEE, LYONS, BROWN, and ENGLAND, JJ., concur.
JOHNSTONE, J., dissents.
JOHNSTONE, Justice (dissenting).
The petitioner relies exclusively on the affidavit of Drenda Percival for his factual showing that the materials in the file are privileged. Percival's only description of the file or its contents is that the file
"was the medical staff credentials file regarding the hospitals credentialing of Dr. Radha Krothapalli and the nature and scope of his privileges to practice medicine at Baptist Medical Center South. Baptist considers the contents of the file to be confidential pursuant to *840 Section 22-21-8 of the Code of Alabama, 1975."
First, the utterly conclusory claims of "credentials" and "credentialing" do not constitute any factual showing at all and therefore do not support or justify our undertaking our own in camera review of these documents or our issuing a writ of mandamus. Second, "the nature and scope of [Dr. Krothapalli's] privileges to practice medicine at Baptist Medical Center South" cannot be a secret at all, much less a privileged secret.
NOTES
[1] Both hospitals are now owned and operated by the same entity, Baptist Health.
[2] Section 22-21-8, Ala.Code 1975, entitled "Confidentiality of accreditation, quality assurance credentialing materials, etc.," states:

"(a) Accreditation, quality assurance and similar materials as used in this section shall include written reports, records, correspondence, and materials concerning the accreditation or quality assurance or similar function of any hospital, clinic, or medical staff. The confidentiality established by this section shall apply to materials prepared by an employee, advisor, or consultant of a hospital, clinic, or medical staff and to materials prepared by an employee, advisor or consultant of an accrediting, quality assurance or similar agency or similar body and to any individual who is an employee, advisor or consultant of a hospital, clinic, medical staff or accrediting, quality assurance or similar agency or body.
"(b) All accreditation, quality assurance credentialing and similar materials shall be held in confidence and shall not be subject to discovery or introduction in evidence in any civil action against a health care professional or institution arising out of matters which are the subject of evaluation and review for accreditation, quality assurance and similar functions, purposes, or activities. No person involved in preparation, evaluation or review of accreditation, quality assurance or similar materials shall be permitted or required to testify in any civil action as to any evidence or other matters produced or presented during the course of preparation, evaluation, or review of such materials or as to any finding, recommendation, evaluation, opinion, or other action of such accreditation, quality assurance or similar function or other person involved therein. Information, documents, or records otherwise available from original sources are not to be construed as being unavailable for discovery or for use in any civil action merely because they were presented or used in preparation of accreditation, quality assurance or similar materials nor should any person involved in preparation, evaluation, or review of such materials be prevented from testifying as to matters within his knowledge, but the witness testifying should not be asked about any opinions or data given by him in preparation, evaluation, or review of accreditation, quality assurance or similar materials."