22 So.3d 445 (2009)
Ex parte FAIRFIELD NURSING AND REHABILITATION CENTER, L.L.C.
(In re Leisa Roby, individually and as the personal representative of the estate of Brenda Joyce Roby, deceased v. Fairfield Nursing and Rehabilitation Center, L.L.C., et al.)
Ex parte Fairfield Nursing and Rehabilitation Center, L.L.C.
(In re Myrtis Hill and Fred Hill v. Fairfield Nursing and Rehabilitation Center, L.L.C., et al.)
1080158 and 1080160.
Supreme Court of Alabama.
March 27, 2009.
*446 Thomas M. Rockwell and Tom B. Walsh of Rockwell & Kaufman, L.L.C., Mobile, for petitioner.
Barry Walker of The Walker Law Firm, Birmingham, for respondents.
SMITH, Justice.
These two petitions for the writ of mandamus, which have been consolidated for purposes of issuing one opinion, involve separate actions against Fairfield Nursing and Rehabilitation Center, L.L.C. ("Fairfield"), in the Jefferson Circuit Court. The trial court entered an order in both actions requiring Fairfield to produce certain documents that Fairfield asserts are privileged under § 22-21-8, Ala.Code 1975, and therefore not subject to discovery. We grant the petitions and issue the writs.

Facts and Procedural History
Fairfield is a long-term-care facility. In case no. 1080158, Leisa Roby, individually and as the personal representative of the estate of Brenda Joyce Roby, deceased, alleged medical-malpractice claims against Fairfield relating to Brenda's death while she was a patient at Fairfield. In case no. 1080160, Myrtis Hill and Fred Hill sued Fairfield asserting medical-malpractice claims based on injuries Myrtis allegedly suffered as a result of Fairfield's actions. Leisa Roby and the Hills are hereinafter collectively referred to as "the plaintiffs" or "the respondents."
In the underlying cases, the plaintiffs filed requests for the production of documents. In the Roby action, Leisa requested "any and all incident reports and/or complaints involving Brenda Roby." The Hills filed a similar request in their action, seeking "incident reports regarding Myrtis Hill from June 1992 to Present." Fairfield filed an objection to both requests based on several grounds, including the contention that the requests sought information privileged under § 22-21-8, Ala.Code 1975.
The plaintiffs in each case moved the trial court to compel the production of the requested documents. The trial court granted the motions to compel. Fairfield filed a motion to "reconsider" in each case, citing § 22-21-8.[1] Accompanying each *447 motion were affidavits asserting that Fairfield does not keep in the ordinary course of business incident reports and witness statements concerning residents and that any such documents do not become part of a resident's medical chart. Additionally, the affidavits asserted that incident reports and witness statements are created for quality-assurance purposes.
Following oral arguments on Fairfield's motions to reconsider, the trial court, in each case, ordered Fairfield to produce the requested documents. Fairfield then petitioned this Court for a writ of mandamus in each case.

Standard of Review
"Mandamus is an extraordinary remedy and will be granted only when there is `(1) a clear legal right in the petitioner to the order sought, (2) an imperative duty upon the respondent to perform, accompanied by a refusal to do so, (3) the lack of another adequate remedy, and (4) properly invoked jurisdiction of the court.' Ex parte Alfab, Inc., 586 So.2d 889, 891 (Ala.1991). In Ex parte Ocwen Federal Bank, FSB, 872 So.2d 810 (Ala.2003), this Court announced that it would no longer review discovery orders pursuant to extraordinary writs. However, we did identify four circumstances in which a discovery order may be reviewed by a petition for a writ of mandamus. Such circumstances arise (a) when a privilege is disregarded, see Ex parte Miltope Corp., 823 So.2d 640, 644-45 (Ala.2001);.... The burden rests on the petitioner to demonstrate that its petition presents such an exceptional casethat is, one in which an appeal is not an adequate remedy. See Ex parte Consolidated Publ'g Co., 601 So.2d 423, 426 (Ala.1992)."
Ex parte Dillard Dep't Stores, Inc., 879 So.2d 1134, 1136-37 (Ala.2003).

Discussion
The issue presented by these petitions is whether Fairfield sufficiently demonstrated that it is entitled to the privilege in § 22-21-8, Ala.Code 1975, with respect to the requested documents. Section 22-21-8 provides:
"(a) Accreditation, quality assurance and similar materials as used in this section shall include written reports, records, correspondence, and materials concerning the accreditation or quality assurance or similar function of any hospital, clinic, or medical staff. The confidentiality established by this section shall apply to materials prepared by an employee, advisor, or consultant of a hospital, clinic, or medical staff and to materials prepared by an employee, advisor or consultant of an accrediting, quality assurance or similar agency or similar body and to any individual who is an employee, advisor or consultant of a hospital, clinic, medical staff or accrediting, quality assurance or similar agency or body.
"(b) All accreditation, quality assurance credentialling and similar materials shall be held in confidence and shall not be subject to discovery or introduction in evidence in any civil action against a health care professional or institution arising out of matters which are the subject of evaluation and review for accreditation, quality assurance and similar functions, purposes, or activities. No person involved in preparation, evaluation or review of accreditation, quality assurance or similar materials shall be permitted or required to testify in any *448 civil action as to any evidence or other matters produced or presented during the course of preparation, evaluation, or review of such materials or as to any finding, recommendation, evaluation, opinion, or other action of such accreditation, quality assurance or similar function or other person involved therein. Information, documents, or records otherwise available from original sources are not to be construed as being unavailable for discovery or for use in any civil action merely because they were presented or used in preparation of accreditation, quality assurance or similar materials nor should any person involved in preparation, evaluation, or review of such materials be prevented from testifying as to matters within his knowledge, but the witness testifying should not be asked about any opinions or data given by him in preparation, evaluation, or review of accreditation, quality assurance or similar materials."
In support of its assertion of the privilege in both of the underlying cases, Fairfield offered the affidavits of Donna Guthrie, the executive director of its facility, and Janie Dawson, the former director of nursing at the facility. Both Guthrie's and Dawson's affidavits identically stated as follows:
"Incident reports and witness statements concerning residents are not kept in the ordinary course of business, nor do they become a part of the resident medical chart. ... Incident reports and witness statements are created for quality assurance purposes. The creation of the reports and the gathering of statements are needed to guarantee the high quality of care for all residents. ... The confidentiality of the incident reports and witness statements is needed to keep investigations of incidents at the facility candid and open. Production of incident reports and witness statements to those outside the facility would be detrimental to the quality of care provided for all residents."
In Ex parte Coosa Valley Health Care, Inc., 789 So.2d 208 (Ala.2000), this Court reaffirmed the principle that the party asserting the privilege under § 22-21-8 has the burden of proving the existence of the privilege and the prejudicial effect of disclosing the information. 789 So.2d at 219-20 (citing Ex parte St. Vincent's Hosp., 652 So.2d 225, 230 (Ala. 1994)). Fairfield contends that the affidavits it submitted with its motions to reconsider sufficiently demonstrated that the requested documents were privileged "quality assurance" materials under § 22-21-8 and that disclosing the information would be prejudicial to Fairfield. Fairfield primarily relies on two cases in support of its position: Ex parte Qureshi, 768 So.2d 374 (Ala.2000), and Kingsley v. Sachitano, 783 So.2d 824 (Ala.2000).
In Ex parte Qureshi, the plaintiff, Larrimore, sought information and documents from Vaughan Regional Medical Center, Inc., pertaining to Dr. F.H. Qureshi, one of its staff physicians. Specifically,
"Larrimore issued a notice of deposition to Vaughan Regional. The notice sought, pursuant to Rule 30(b)(6), Ala. R. Civ. P., to have a representative of Vaughan Regional testify regarding several subjects, including Dr. Qureshi's qualifications, training, education, and board certification in the field of orthopedic surgery. The notice further sought any investigations or evaluations of Dr. Qureshi and his qualifications, training, education, and board certification in the field of orthopedic surgery conducted or received by Vaughan Regional before Dr. Qureshi was granted staff privileges. In addition, pursuant to Rule 30(b)(5), Ala. R. Civ. P., the notice *449 asked that Vaughan Regional produce certain documents at this deposition, including the following:
"`3. All documents which evidence, or relate or pertain in any way to, the business or contractual relationship between Vaughan Regional Medical Center, Inc., and Dr. F.H. Qureshi, including, without limitation, the following:
"`....
"`h. documents evidencing, or pertaining in any way to, any investigations or evaluations of Dr. Qureshi and his qualifications, training, education and board certification in the field of orthopaedic surgery conducted or received by [Vaughan Regional] before it entered into a contractual relationship with Dr. Qureshi;
"`i. documents evidencing, or pertaining in any way to, Dr. Qureshi's qualifications, training, education and board certification in the field of orthopaedic surgery;
"`j. correspondence between [Vaughan Regional] and the American Board of Orthopaedic Surgeons, and/or documents received by [Vaughan Regional] from the American Board of Orthopaedic Surgeons, pertaining in any way to Dr. Qureshi; and
"`k. correspondence between [Vaughan Regional] and any other institution or hospital, or documents received by any other institution or hospital, where Dr. Qureshi has practiced medicine or received training, pertaining in any way to Dr. Qureshi."'
768 So.2d at 375.
In its response to the motion to compel production of the requested information, Vaughan Regional included
"the affidavit of Dr. Lotfi Bashir, who was then serving as chairman of Vaughan Regional's credentialing committee. In the affidavit, Dr. Bashir stated that the documents that would be responsive to Request 3(h)-(k) were maintained as part of Vaughan Regional's credentialing file on Dr. Qureshi. Dr. Bashir further stated that it was essential that the materials gathered by the hospital be kept confidential, so as to ensure that physicians applying for hospital staff privileges would provide complete and accurate information about their qualifications. Moreover, Dr. Bashir stated, if the information did not remain confidential then `physicians and health care institutions from whom materials are requested in the credentialing process would be less inclined to provide frank and open criticisms of physician applicants where warranted."'
768 So.2d at 375-76 (footnote omitted). This Court held that the requested information was privileged under § 22-21-8. 768 So.2d at 380.
In Kingsley, the plaintiff, a vascular surgeon, sued three doctors alleging, among other things, "negligence or wantonness in the performance of a peer review of the plaintiff by the Tissue and Transfusion Committee of Russell Hospital." 783 So.2d at 825. The plaintiff issued a subpoena to Russell Hospital seeking certain peer-review documents. Citing § 22-21-8, Russell Hospital objected to the subpoena. 783 So.2d at 825.
At the request of the plaintiff in Kingsley, the trial court "`held an evidentiary hearing to afford the plaintiff an opportunity... to seek the production of [the] documents.'" 783 So.2d at 826 (quoting an order of the trial court). The trial court held that the subpoenaed documents were privileged under § 22-21-8.
*450 In affirming the order of the trial court, this Court stated:
"In Ex parte Krothapalli, 762 So.2d 836 (Ala.2000), this Court chronicled the reasoning behind confidentiality statutes such as § 22-21-8, which have been adopted by many states. The statutes provide confidentiality for peer-review processes as a method of `encouraging self-regulation by the medical profession through peer review and evaluation.' Cruger v. Love, 599 So.2d 111, 113-14 (Fla.1992) (quoted in Krothapalli, 762 So.2d at 838). The Florida Supreme Court, in Cruger, explained that the statutes were enacted `in an effort to control the escalating cost of health care by encouraging self-regulation by the medical profession through peer review and evaluation.' 599 So.2d at 113-14 (quoted in Krothapalli, 762 So.2d at 838).
"In support of his position, the plaintiff cites Ex parte St. Vincent's Hospital, 652 So.2d 225 (Ala.1994), in which this Court declined to apply § 22-21-8 so as to prevent disclosure of the records of a hospital's infection-control committee. However, in that case there was no evidence that a function of the committee was accreditation or quality assurance.
"The trial judge in this case had before him the deposition of Frank Harris, president and chief executive officer of Russell Hospital. Harris testified that he had reviewed the documents requested by the plaintiff and had determined that they were the subject of quality assurance, credentialling, and accreditation and thus were subject to the privilege of § 22-21-8.
"We have carefully reviewed the record in this case, and we find no abuse of discretion on the part of the trial judge. His judgment is due to be affirmed, on the authority of Ex parte Qureshi, 768 So.2d 374 (Ala.2000), and Ex parte Krothapalli, supra."
783 So.2d at 828.
We agree with Fairfield that the evidence presented in the affidavits submitted in support of the assertion of the privilege is substantially similar to the evidence presented in the affidavits in Kingsley and Ex parte Qureshi. The affidavits Fairfield offered stated that the requested documents were created for quality-assurance purposes, that the documents are needed to guarantee the high quality of care for all residents, and that the confidentiality of the reports and statements is necessary. Section 22-21-8 expressly applies to "quality assurance" materials.
The affidavit in Kingsley stated that the requested documents "were the subject of quality assurance, credentialling, and accreditation." 783 So.2d at 828. The affidavit in Ex parte Qureshi stated that the requested documents were a part of the hospital's credentialing file. 768 So.2d at 376. Additionally, the affidavit in Ex parte Qureshi stated that "it was essential that the materials gathered by the hospital be kept confidential" to ensure that "complete and accurate information" would be provided regarding the qualifications of physicians seeking privileges at the hospital. 768 So.2d at 376.
The respondents in these present cases have not offered any evidence in opposition to the affidavits submitted by Fairfield with its motions to reconsider. The respondents contend, however, that Fairfield was required to provide more detailed facts in support of its assertion of the privilege.
They argue that Fairfield was required to show (1) that the incident reports and witness statements were considered by a quality-assurance committee and (2) that the records were created at the direction *451 of such a committee and not in the regular course of business.
In Ex parte Krothapalli, 762 So.2d 836 (Ala.2000), this Court applied § 22-21-8 to a request for a hospital to produce the credentialing files of one of its physicians. This Court stated:
"In construing a statute, we must ascertain and give effect to the intent of the Legislature as that intent is expressed through the language of the statute. See BP Exploration & Oil, Inc. v. Hopkins, 678 So.2d 1052, 1054 (Ala.1996). The intent of the Legislature in adopting a statute may be gleaned from considering the language used, the reason and necessity for the statute, and the goals the Legislature sought to accomplish. Id. Section 22-21-8 was enacted as Act No. 81-801, Ala. Acts 1981. The title to that Act reads: `To provide for the confidentiality of all written materials and activities concerning the accreditation, quality assurance, or similar function of any hospital, clinic, or medical staff.'
"In construing this statute, we adopt the reasoning of the Florida Supreme Court and the South Carolina Supreme Court in the following cases, in which those courts construed peer-review statutes substantially similar to § 22-21-8.
"In Cruger v. Love, 599 So.2d 111 (Fla.1992), the Florida Supreme Court, construing Florida's peer-review statute, Fla. Stat. Ann. § 766.101(5) (1989), stated:
"`The Florida Legislature enacted these peer review statutes in an effort to control the escalating cost of health care by encouraging self-regulation by the medical profession through peer review and evaluation. In order to make meaningful peer review possible, the legislature provided a guarantee of confidentiality for the peer review process....
"`....
"`... While we recognize[] ... that the discovery privilege [impinges] upon the rights of litigants to obtain information helpful or even essential to their cases, we assume[] that the legislature balanced that against the benefits offered by effective self-policing by the medical community.
"`We hold that the privilege provided by [the peer-review statutes] protects any document considered by the committee or board as part of its decision-making process. The policy of encouraging full candor in peer review proceedings is advanced only if all documents considered by the committee or board during the peer review or credentialing process are protected. Committee members and those providing information to the committee must be able to operate without fear of reprisal. Similarly, it is essential that doctors seeking hospital privileges disclose all pertinent information to the committee. Physicians who fear that information provided in an application might someday be used against them by a third party will be reluctant to fully detail matters that the committee should consider.'
"599 So.2d at 113-14. (Citation omitted.)
"Similarly, the South Carolina Supreme Court, in McGee v. Bruce Hosp. System, 312 S.C. 58, 439 S.E.2d 257 (1993), explained:
"`The overriding public policy of the confidentiality statute is to encourage health care professionals to monitor the competency and professional conduct of their peers to safeguard and improve the quality of patient care. The underlying purpose *452 behind the confidentiality statute is not to facilitate the prosecution of civil actions, but to promote complete candor and open discussion among participants in the peer review process....
"`....
"`We find that the public interest in candid professional peer review proceedings should prevail over the litigant's need for information from the most convenient source.'
"312 S.C. at 61-62, 439 S.E.2d at 259-60. (Citations omitted.)
"It seems clear to us, as it did to the Supreme Courts of Florida and South Carolina, that the purpose of a peer-review statute is to encourage full candor in peer-review proceedings and that this policy is advanced only if all documents considered by the committee or board during the peer-review or credentialing process are protected. In the title to Act No. 81-801, the Legislature stated the purpose of the Act as being `[t]o provide for the confidentiality of all written materials and activities concerning the accreditation, quality assurance, or similar function of any hospital, clinic, or medical staff.' Given the broad language used by the Legislature in the title to this Act, we conclude that the documents the plaintiff seeks from the two hospitals are privileged."
762 So.2d at 838-39.
There is language in Ex parte Krothapalli suggesting that the hospital in fact had an official "committee" presumably similar to the entity respondents argue § 22-21-8 requires. However, the opinion does not state clearly whether such a committee existed, nor does it suggest that the existence of such a committee is a prerequisite to a valid assertion of the privilege under § 22-21-8.[2]
More importantly, the language of § 22-21-8 does not require that a quality-assurance "committee" exist, nor does it limit the privilege to materials created solely at the direction of such a committee. Rather, § 22-21-8(a) provides that
"[t]he confidentiality established by this section shall apply to materials prepared by an employee, advisor, or consultant of a hospital, clinic, or medical staff and to materials prepared by an employee, advisor or consultant of an accrediting, quality assurance or similar agency or similar body and to any individual who is an employee, advisor or consultant of a hospital, clinic, medical staff or accrediting, quality assurance or similar agency or body."
(Emphasis added.) Further, subsection (b) provides that "[a]ll accreditation, quality assurance credentialling and similar materials... shall not be subject to discovery or introduction in evidence in any civil action against a health care ... institution arising out of matters which are the subject of evaluation and review for accreditation, quality assurance and similar functions, purposes, or activities."
To support their argument that § 22-21-8 requires Fairfield to prove the existence of a quality-assurance committee, the respondents rely primarily on the following *453 two Alabama cases: Ex parte Anderson, 789 So.2d 190 (Ala.2000), and Ex parte Cryer, 814 So.2d 239 (Ala.2001).[3] Neither of those cases, however, supports the respondents' argument that Fairfield must affirmatively demonstrate the existence of an official committee as a part of its assertion of the privilege provided in § 22-21-8.
The respondents cite Ex parte Anderson for its statement that
"information and documents that specifically concern the ... incident and that may be obtained from [the defendant doctor] himself as an `original source' are discoverable. ...
"... [The plaintiff] is entitled to any information and documents regarding her specific allegations that can be obtained from [the defendant doctor] himself as an original source. Likewise [the plaintiff] is entitled to any material produced by the hospital or any associated committee in its regular course of business."
789 So.2d at 203 (citations omitted). The respondents in these present cases have not argued, however, that the requested documents fall under the "original source" category described in Ex parte Anderson. See also § 22-21-8(b). Moreover, the affidavits that Fairfield submitted state that the requested documents are not kept in the regular course of business. Thus, Ex parte Anderson does not support the respondents' position.
Ex parte Cryer involved a claim of privilege as to handwritten notes a defendant doctor had made in preparation for a meeting with the physician shareholders of Mobile Ob-Gyn, P.C., another of the defendants in the case. 814 So.2d at 243-44. This Court held that § 22-21-8 did not apply to the notes under the circumstances of the case because the shareholder physicians did not qualify as "medical staff" under § 22-21-8. 814 So.2d at 244-45. This Court stated:
"[Act No. 81-801, Ala. Acts 1981, from which § 22-21-8 is codified,] specifically provides for the confidentiality of all written materials and activities concerning the accreditation, quality assurance, or similar function of any hospital, clinic, or medical staff. Accreditation and quality-assurance functions generally are considered to be connected to hospitals, clinics, etc., that are regulated in a manner different from an individual physician or a group of physicians operating as a private association or a private corporation, as is the case here. Consequently, we conclude that the Legislature intended only to provide for the confidentiality of all written materials and activities concerning hospitals and clinics, not private associations or corporations or individual physicians."
814 So.2d at 245 (emphasis added). In the present case, however, it is undisputed that Fairfield, as a long-term-care facility, qualifies under § 22-21-8 as a "hospital, clinic, or medical staff." Therefore, Ex parte Cryer is distinguishable from the present case.
The respondents also contend that
"if [Fairfield's] argument is extended to its logical (or, rather, illogical) conclusion, nearly every document created by [Fairfield], including garden-variety *454 medical records, would be privileged because they are all somehow related to the quality of patient care. Such a tenuous connection to `quality assurance' would, in effect, bar discovery in a medical negligence action."
That contention of the respondents, however, overlooks the particular facts of the unopposed evidence Fairfield presented in these cases in support of its assertion of the privilegei.e., the testimony in the affidavits indicating that the requested documents are not kept in the ordinary course of business and do not become a part of a resident's medical chart.
Finally, the respondents suggest that Fairfield was required to submit the documents for the trial court to conduct in camera examinations. See, e.g., Roby's answer, p. 10 ("Indeed, [Fairfield] did not ever submit the requested documents to the trial court for an in camera review."). However, the respondents do not indicate that they ever requested such an in camera review, and they do not cite any authority indicating that Fairfield was required to voluntarily submit the documents for such an inspection in the absence of an order requiring it to do so.

Conclusion
Because Fairfield offered sufficient evidence demonstrating that it is entitled to the privilege provided in § 22-21-8, the trial court exceeded its discretion in ordering Fairfield to produce the requested documents in the underlying actions.[4]
The petitions for the writ of mandamus are granted.
1080158PETITION GRANTED; WRIT ISSUED.
1080160PETITION GRANTED; WRIT ISSUED.
LYONS, WOODALL, STUART, BOLIN, and SHAW, JJ., concur.
PARKER, J., concurs in the result.
COBB, C.J., and MURDOCK, J., dissent.
COBB, Chief Justice (dissenting).
I join Justice Murdock's dissenting opinion; I agree completely with his analysis. In addition, I offer the following observations. These petitions present the Court with the critical issue whether it should displace the trial court's determination, made in the exercise of its sound discretion,[5] that Fairfield was not entitled to the *455 privilege against discovery afforded by Ala.Code 1975, § 22-21-8. I recognize that the information sought by the respondents might ultimately be discoverable through discovery attempts directed at the original sources of the information even if Fairfield is granted the § 22-21-8 privilege. See, e.g., Ex parte Krothapalli, 762 So.2d 836 (Ala.2000). Generally, this Court has upheld the privilege under § 22-21-8 when the health-care provider has shown: (1) that a review committee existed; (2) that the disputed discovery documents or testimony was created by the committee or sets forth the activities of the committee; and/or (3) that the disputed documents were submitted for an in camera inspection. See, e.g., Ex parte Cryer, 814 So.2d 239 (Ala.2001) (holding that a doctor's handwritten notes were not protected by the § 22-21-8 privilege). See also Ex parte Qureshi, 768 So.2d 374 (Ala.2000)(upholding privilege where hospital produced testimony of chairman of credentialing committee stating that the documents requested were maintained as part of a doctor's credentialing file); Krothapalli, supra (upholding privilege where documents were submitted to the trial court for an in camera inspection); and Ex parte Burch, 730 So.2d 143 (Ala.1999) (upholding privilege where hospital produced testimony to the effect that a quality-assurance committee existed and that its function was to review certain cases to lead to an improvement in the care of patients at the hospital).
Although the majority attempts to distinguish Cryer based on Fairfield's status as a long-term-care facility, that distinction does not address the fact that Fairfield failed to show that the materials in question were generated as a function of a committee created to perform a quality-assurance evaluation. It is worth contrasting these facts with those in Kingsley v. Sachitano, 783 So.2d 824 (Ala. 2000), in which the Court held that sufficient evidence was presented to uphold the privilege against discovery because the material sought was from a peer-review committee. In Kingsley, the Court distinguished its prior decision in Ex parte St. Vincent's Hospital, 652 So.2d 225 (Ala.1994), in which it held that the hospital did not meet its burden. This Court in Kingsley recognized that in St. Vincent's the hospital had failed to show that the material sought was created as a process of a committee whose purpose was accreditation or quality assurance. The opinion in St. Vincent's states:
"The discovery sought by Zeneca is not privileged under either § 22-21-8 or § 34-24-58. The Infection Control Committee is a standing hospital committee, coordinated by Becky Harrison, a registered nurse. The burden of proving that a privilege exists and proving the prejudicial effect of disclosing the information is on St. Vincent's. St. Vincent's has produced no evidence that the Infection Control Committee served as a utilization review committee and no evidence that a function of that committee was accreditation or quality assurance. The trial judge did not abuse his discretion in ordering that St. Vincent's to produce the records."
652 So.2d at 230 (emphasis added).
Moreover, I respectfully dissent from the suggestion in the majority opinion that the respondents were under some sort of burden to require Fairfield to seek an in *456 camera review. After the trial court had granted discovery in each case of the material Fairfield sought to avoid disclosing, the burden was entirely on Fairfield to demonstrate that it was entitled to protective orders.
"Typically, when an objection to a discovery request is made, the burden is on the objecting party to state specifically and to support the reasons for the objection. See Rules 26(b)(1) and (c), Ala. R. Civ. P.
"`[T]he party who seeks a protective order has the burden of showing good cause why discovery should not be had.
"`"Thus, to be entitled to a protective order, a movant must either show good cause why the objected-to deposition or production of documents would be unduly burdensome or expensive, oppressive, embarrassing or annoying, or that the subject matter sought to be discovered is privileged."'
"Ex parte Scott, 414 So.2d 939, 941 (Ala. 1982) (quoting Assured Investors Life Ins. Co. v. National Union Assocs., Inc., 362 So.2d 228, 231 (Ala.1978)); see, e.g., Ex parte Garrick, 642 So.2d 951, 952-53 (Ala.1994) (`Under Rule 26(b)(3), the party objecting to discovery bears the burden of establishing the elements of the work-product exception.')."
Ex parte CIT Commc'n Fin. Corp., 897 So.2d 296, 300 (Ala.2004). See also Ex parte Cuna Mut. Ins. Soc'y, 507 So.2d 1328 (Ala.1987), and Ex parte Scott, 414 So.2d 939 (Ala.1982). It was not the respondents' burden to have Fairfield present the material in question for an in camera review to support its motions for a protective order; it was Fairfield's burden. It is undisputed that Fairfield failed to demonstrate that the materials in question should be afforded the privilege of § 22-21-8 by submitting the material to the trial court for an in camera inspection. Under the circumstances of these cases, I do not believe that this Court can correctly hold that the trial court exceeded its discretion in denying Fairfield's motion for a protective order. Accordingly, I respectfully dissent.
MURDOCK, Justice (dissenting).
Fairfield Nursing and Rehabilitation Center, L.L.C. ("FNRC"), asks this Court to hold that the trial court abused its discretion.
The trial court's orders at issue are discovery orders. The orders require the disclosure of materials that, for all that appears, will reveal what happened to the plaintiffs' injured family members, who was responsible for the injuries, and in what measure such person or persons might be culpable.
FNRC's position that the trial court abused its discretion is based on nothing more than bareindeed, bare minimum assertions in identically worded affidavits signed by one former employee and one current employee. The key averment included in each of these affidavits is a conclusory one that the requested materials are somehow related (how, we are not told) to something called "quality assurance." The affidavit speaks not of an established "quality assurance" program or procedures, but instead simply borrows from § 22-21-8(b), Ala.Code 1975, the term "quality assurance," an obviously general term that appears at best to be ambiguous.[6]
*457 Although FNRC asserts that these affidavits were "unopposed," I submit that the trial judge could have acted within his discretion to employ his common sense and experience with regard to the issue at hand and, in the context of the above-described concerns, to find inadequate the conclusory assertions found in these affidavits. Roby, for example, argues in her brief that the affidavits fail to provide any facts that would be material to aiding the trial court in determining whether the privilege is applicable here:
"Although the affiants state that the materials are allegedly `created for quality assurance purposes,' the affiants do not state what alleged system of `quality assurance' that FNRC has in place or what its alleged methods and procedures for ensuring `quality assurance' are. Nor do the affidavits attempt to describe what individuals or committee (if any) is responsible for monitoring `quality assurance.' Finally, although the affidavits give conclusory assurances that the materials `are needed to guarantee the high quality of care for all residents' and `to keep investigations of incidents at the facility candid and open,' the reader is left to guess as to `why' and `how' these things are allegedly achieved."
Roby brief, at 10. Roby also argues:
"[T]his Court has never construed the words `quality assurance' so loosely as FNRC argues should be done in this case. Nor should the Court do so. Indeed, if FNRC's argument is extended to its logical (or, rather, illogical) conclusion, nearly every document created by FNRC, including garden-variety medical records, would be privileged because they are all somehow related to the quality of patient care. Such a tenuous connection to `quality assurance' would, in effect, bar discovery in a medical negligence action. Moreover, it would turn the § 22-21-8 privilege into a full-fledged `self critical analysis' privilege a privilege this Court has expressly refused to adopt."
Roby brief, at 11-12 (citing Ex parte Cryer, 814 So.2d 239 (Ala.2001)) (emphasis in original).
The general rule in Alabama is that
"`"[d]iscovery matters are within the trial court's sound discretion, and its ruling on those matters will not be reversed absent a showing of abuse of discretion and substantial harm to the appellant."' Ex parte Coosa Valley Health Care, Inc., 789 So.2d 208 (Ala. 2000) (quoting Wolff v. Colonial Bank, 612 So.2d 1146, 1146 (Ala.1992))."
Ex parte Cryer, 814 So.2d at 243. Nevertheless, "`[t]he writ of mandamus is a drastic and extraordinary remedy, to be issued,'" among other things, only when the petitioner has shown "`a clear legal right ... to the order sought.'" Id. (quoting Ex parte Coosa Valley Health Care, Inc., 789 So.2d 208, 216 (Ala.2000)). """[T]he right sought to be enforced by mandamus must be clear and certain with no reasonable basis for controversy about the right to relief,"' and "`the writ will not issue where the right in question is doubtful.'"'" Id. (quoting Ex parte Coosa Valley Health Care, Inc., 789 So.2d at 216 (quoting earlier cases)). Given the limited and conclusory nature of the assertions contained in the affidavits presented by FNRC, as well as the discretion afforded the trial court with respect matters of discovery, I cannot conclude that the petitioner *458 in these cases has made the required showing. I therefore, respectfully, must dissent.
COBB, C.J., concurs.
NOTES
[1] This Court in Ex parte Orkin, Inc., 960 So.2d 635, 640 (Ala.2006), "reaffirm[ed] the principle that `the party seeking a writ of mandamus in a discovery dispute must properly move for a protective order under Rule 26(c), Ala. R. Civ. P.[, before petitioning for the writ].'" (Quoting Ex parte CIT Commc'n Fin. Corp., 897 So.2d 296, 298 (Ala.2004).). In Ex parte Gentiva Health Services, Inc., 8 So.3d 943, 947-48 (Ala.2008), this Court held that a motion to "reconsider" that was in substance a motion for a protective order satisfied the requirement that a party seeking a writ of mandamus in a discovery dispute first move for a protective order under Rule 26(c), Ala. R. Civ. P. ("Gentiva's motion to `reconsider' the trial court's order requiring production of [the] resignation letter specifically sought to prohibit discovery of [the] resignation letter, as protected under § 6-5-551, Ala.Code 1975, and the motion clearly afforded the trial court the opportunity to address its alleged error before Gentiva sought mandamus relief from this Court to correct the alleged error. In substance, Gentiva's motion to `reconsider' was actually a motion for a protective order.... Therefore, Gentiva filed a motion for a protective order before it petitioned this Court for the writ of mandamus; thus, Gentiva is not procedurally barred from seeking mandamus relief on the basis that it failed to file a motion for a protective order.").
[2] The dissenting opinion of Justice Johnstone in Ex parte Krothapalli notes that the only evidence offered in support of the assertion of the privilege was an affidavit that described the contents of the requested file as

"`the medical staff credentials file regarding the hospitals credentialing of Dr. Radha Krothapalli and the nature and scope of his privileges to practice medicine at Baptist Medical Center South. Baptist considers the contents of the file to be confidential pursuant to Section 22-21-8 of the Code of Alabama, 1975.'"
762 So.2d at 839-40 (Johnstone, J., dissenting).
[3] The respondents also cite caselaw from other jurisdictions including Arizona, Connecticut, Florida, Illinois, Massachusetts, Michigan, Mississippi, Missouri, Nebraska, Nevada, New York, North Carolina, North Dakota, Ohio, Rhode Island, Texas, Utah, Washington, and West Virginia. The respondents have not demonstrated, however, that any of those foreign decisions involve the application of a privilege statute substantially similar to § 22-21-8, Ala.Code 1975, to facts analogous to those in the present cases.
[4] We emphasize that the fact that Fairfield offered evidence by affidavit distinguishes the instant case from decisions in which no evidence was submitted in support of the assertion of the privilege under § 22-21-8. See, e.g., Ex parte Coosa Valley Health Care, Inc., 789 So.2d at 219-20 ("Coosa Valley has offered no evidence to show that the information sought was maintained for purposes of quality assurance or for any other purpose covered by § 22-21-8. Compare Ex parte Qureshi, 768 So.2d 374 (Ala.2000); Ex parte Krothapalli, 762 So.2d 836 (Ala.2000) (in each of those cases, the petitioner submitted evidence in the form of affidavits establishing that the information sought by the discovery requests was privileged). Accordingly, Coosa Valley did not meet its burden of proving that the information sought by the discovery requests was privileged."); Ex parte St. Vincent's Hosp., 652 So.2d 225, 230 (Ala.1994) ("The discovery sought by Zeneca is not privileged under either § 22-21-8 or § 34-24-58. The Infection Control Committee is a standing hospital committee .... The burden of proving that a privilege exists and proving the prejudicial effect of disclosing the information is on St. Vincent's. St. Vincent's has produced no evidence that the Infection Control Committee served as a utilization review committee and no evidence that a function of that committee was accreditation or quality assurance.").
[5] "`"Discovery matters are within the trial court's sound discretion, and its ruling on those matters will not be reversed absent a showing of abuse of discretion and substantial harm to the appellant." Wolff v. Colonial Bank, 612 So.2d 1146, 1146 (Ala. 1992) ....'" Ex parte John Alden Life Ins. Co., 999 So.2d 476, 480 (Ala.2008) (quoting Ex parte Henry, 770 So.2d 76, 79 (Ala.2000)). See also Ex parte Ocwen Federal Bank, FSB, 872 So.2d 810 (Ala.2003).
[6] The ambiguity of the term "quality assurance" is lessened, however, if it is understood "`to embrace only objects similar in nature to those objects enumerated'" by the terms that precede and follow it in § 22-21-8(b), i.e., "accreditation" and "credentialing," an understanding that suggests something more in the way of procedure and substance than was shown to the trial court in this case. See Ex parte Emerald Mountain Expressway Bridge, L.L.C., 856 So.2d 834, 842-43 (Ala.2003)(discussing the principles of context, noscitur a sociis, and ejusdem generis in relation to statutory construction).