MOORE, Chief Justice
(dissenting).
W. David Lindsay appeals from a summary judgment entered for Baptist Health System, Inc., d/b/a Shelby Baptist Medical Center (“SBMC”), in his action alleging negligence, wantonness, breach of contract, and defamation. Because I believe that Lindsay has established the existence of genuine issues of material fact, I respectfully dissent from affirming- the summary judgment.

I. Facts and Procedural History

Andy Alexander made a series of harassing prank telephone calls to the emergency department at Shelby Baptist Medical Center on December 12 and 18, 2008, pretending to be Lindsay, an orthopedic surgeon at Shelby Baptist Medical Center. The strange content of the calls should have alerted the hospital that the caller, who succeeded in speaking to one of Lindsay’s patients, was not Lindsay. As a result of the calls, Wilma Scott, a nursing supervisor at the medical center who allegedly harbored a grudge against Lindsay, reported him to hospital management for “possible impairment and potentially inappropriate conversations involving a patient.” Scott committed suicide on January 24, 2009, six weeks after her report triggered the events in this case.
Upon returning from supper on Saturday night, December 13, Lindsay received a telephone call from David Wilson, president of SBMC, who informed him that because of harassing telephone calls he was reported to have made to a patient’s room, Lindsay was being summarily suspended and ordered off the hospital grounds. The following Monday SBMC reported the temporary suspension of privileges to the Alabama Board of Medical Examiners, which reacted by suspending Lindsay’s medical license. On receiving that report, SBMC automatically revoked Lindsay’s privileges at the hospital.
Lindsay immediately sought injunctive relief to restore his medical license and hospital privileges. The Montgomery Cir *91 cuit Court[1] granted him relief, but his suspension/revocation had lasted about five weeks, causing significant harm to his practice and generating great personal stress and anguish. He explained in his affidavit opposing the motion for a summary judgment:
“[A]s a result of the summary suspension of my hospital privileges and the ensuing suspension of my medical license, I suffered severe financial losses, loss of approximately half of my office support staff, including my surgical assistant of approximately six years; great mental anguish and stress, loss of reputation, a loss of patient referrals, and came close to losing my medical practice. My insurance premium for my medical malpractice insurance coverage almost doubled in cost, and I had a total loss of income in my medical practice located in Alabaster and the Montgomery area for five (5) to six (6) weeks.”
Lindsay amended his original complaint to allege negligence and willful and wanton conduct against SBMC and also breach of contract and defamation. SBMC moved for a summary judgment arguing immunity under federal and state statutes that protect from judicial review documentation and proceedings of peer-review and quality-assurance processes. See §§ 6-5-333, 22-21-8, and 34-24-58, Ala.Code 1975, and 42 U.S.C. §§ 11111 and 11112. Finding that certain documents Lindsay used to prove his case were absolutely immune from disclosure under these statutes, the trial court struck them as inadmissible. The court also struck Lindsay’s affidavit in its entirety as being of no evidentiary value and without further explanation entered a summary judgment for SBMC.

II. Standard of Review

A trial court’s summary judgment is reviewed de novo, and the judgment is given no presumption of correctness. Baldwin v. Branch, 888 So.2d 482, 484 (Ala.2004). A summary judgment is proper when there is “no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law.” Rule 56, Ala. R. Civ. P.

III. Analysis

SBMC has not contested by affidavit or otherwise Lindsay’s statement of the harm its actions caused him. In any case I am required to accept Lindsay’s version of the facts: “[T]he court is to view the evidence in a light most favorable to the nonmoving party and to draw all reasonable inferences in favor of that party.” Capital Alliance Ins. Co. v. Thorough-Clean, Inc., 639 So.2d 1349, 1350 (Ala.1994). SBMC seeks to bypass Lindsay’s allegations of harm by arguing that it is immune from suit under statutory provisions that shield peer-review and quality-assurance activities. Although SBMC largely treats these statutory provisions as providing absolute immunity from suit, they, in fact, contain substantial qualifications that give rise to factual questions unsuitable for resolution at the summary-judgment stage.

A. Peer-Review Privilege

Section 6-5-333, AIa.Code 1975, states that any physician who serves on a medi-eal-care peer-review committee shall not be liable in damages as a result of “any action taken or recommendation made by him within the scope of his function” on the committee “if such action was taken or recommendation made without malice and in a reasonable belief that such action or recommendation is warranted by the facts *92 made known to him.” § 6-5-333(a) (emphasis added). These statutory qualifications are significant. For the privilege to apply, the trier of fact must determine that the committee acted without malice and on a reasonable fact-based belief.
Alexander made his first prank telephone calls to Shelby Baptist Medical Center on Friday, December 12. Lindsay states that during that evening he “was never contacted by any nurses or employees of SBMC regarding any strange or disturbing phone calls or unusual events regarding the treatment of my patients .... ” His privileges were suspended by Wilson the next evening. The only communication SBMC had with ‘Lindsay before the suspension was a demeaning and accusatory telephone interrogation by the chief of surgery, Dr. Clement Cotter. In his affidavit Lindsay states: “While [I was] speaking to Dr. Cotter, he began asking me extremely unusual questions. Dr. Cotter asked me if I was taking any drugs and also asked me to count backwards from ten, twice, which I did. Dr. Cotter was very accusatory. None of this made any sense to me.”
The shortened time frame in which SBMC made its suspension decision and its failure to seek an explanation from Lindsay raise factual questions as to whether it conducted any investigation at all, let alone a “reasonable” one, before suspending Lindsay’s privileges. Lindsay thus has raised a genuine issue of material fact as to whether the statutory conditions for granting § 6-5-333 immunity exist in this case. Additionally, the statute applies only to individual practitioners who sit on or assist peer-review committees. The statute by its terms does not immunize corporate entities such as SBMC, the defendant in this case.

B. Utilization-Review-Committee Privilege

Section 34-24-58, Ala.Code 1975, protects from legal action the acts of any physicians’ committee of a licensed hospital, but only if the committee’s decisions were made “in good faith and without malice and on the basis of facts reasonably known or reasonably believed to exist.” The qualifying phrase raises factual questions that cannot be resolved at the summary-judgment stage in the circumstances of this case. “The qualified immunity, however, is not absolute. In a majority of cases immunity only applies when the investigation is conducted in good faith, without malice, and based upon the reasonable belief that the committee’s action is warranted.” George E. Newton II, Maintaining the Balance: Reconciling the Social and Judicial Costs of Medical Peer Review Protection, 52 Ala. L.Rev. 723, 730 (2001).

C. Quality-Assurance Privilege

Section 22-21-8, Ala.Code, 1975, which privileges from discovery accreditation and quality-assurance materials, states that “[i]nformation, documents, or records otherwise available from original sources” are available for discovery regardless of whether they were “presented or used in preparation” of quality-assurance materials. § 22-21-8(b). Additionally, any person involved in the preparation and review of such materials may still testify “as to matters within his knowledge.” § 22-21-8(b). Section 6-5-333 contains similar qualifications. “Nothing contained herein shall apply to records made in the regular course of business by a hospital ... or records available from original sources” even though “presented during proceedings” of a peer-review committee. § 6-5-333(d).
*93 Thus, state law provides only a qualified privilege for peer-review or quality-assurance material.[2] Apart from the requirements that the hospital committee act in good faith and make a reasonable investigation, information considered in performing the peer-review or quality-assurance function is still discoverable if contained in business records or by direct inquiry to the original source. “[R]ecords made in the regular course of business, exclusive of official committee functions, and otherwise available from their original sources, are discoverable and not privileged.” Ex parte Anderson, 789 So.2d 190, 199 (Ala. 2000). See also Ex parte Krothapalli, 762 So.2d 886, 839 (Ala.2000) (noting that “§ 22-21-8 does not protect information if it is obtained from alternative sources”); Newton, Maintaining the Balance, 52 Ala. L.Rev. at 736 (noting that “peer review statutes protect the work product of a review proceeding, not the underlying substantive evidence”).
In Ex parte Fairfield Nursing & Rehabilitation Center, L.L.C., 22 So.3d 445 (Ala. 2009), this Court held that certain documents were privileged under § 22-21-8 based on a nursing-home affidavit that “the requested documents are not kept in the ordinary course of business and do not become a part of a resident’s medical chart.” 22 So.3d at 454. We noted, however, that those statements were “unopposed.” Id. In this case Claire Owens, Director of Risk Management and Corporate Compliance for SBMC, stated by affidavit that documents relating to the investigation of Lindsay were “not kept by [SBMC] in the ordinary course of business.” Lindsay in his affidavit disagreed. He stated that “[s]ome, if not all of the various documents ... and the audio recordings of calls to the Emergency Department are records kept in the ordinary course of business at the Hospital.”
To establish his personal knowledge of those facts, Lindsay stated that he had been a physician at Shelby Baptist Medical Center since 1993 and that as a trauma surgeon he “learn[ed] firsthand how the emergency room works.”
“I am well aware of the importance of voice recordings on all calls to the emergency room and how these are kept in the normal course of business. As a trauma surgeon, I am also familiar with the business practices of the SBMC emergency room.
[[Image here]]
“Hospital charts of patients and recorded phone calls to the Emergency Department are regularly kept in the ordinary course of business at SBMC and do not constitute peer review or quality assurance materials.”
Unlike in Fairfield Nursing, the factual averments in this case as to privilege are not unopposed. On the motion of SBMC the trial court struck Lindsay’s affidavit on the basis that “said testimony is supported by neither a factual basis nor personal knowledge sufficient to support the conclu-sory, speculative assertion that the quality assurance materials are not quality assurance materials.” Given the detailed statements in Lindsay’s affidavit based on his many years of personal experience as an emergency-room surgeon at Shelby Baptist Medical Center, I cannot agree that his affidavit is so insubstantial as to warrant being stricken from the record.

*94
D.The Substantial-Evidence Test

Alabama requires a party opposing a summary-judgment motion to offer “substantial evidence” of the existence of a genuine issue of material fact, i.e., “evidence of such quality and weight that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved.” West v. Founders Life Assurance Co. of Florida, 547 So.2d 870, 871 (Ala.1989). See also § 12-21-12(d), Ala.Code 1975. “[T]he dispute about a material fact is ‘genuine’ ... if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.” Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).
A fair-minded juror, mindful of Lindsay’s credentials and experience, could reasonably infer that at least some of the documents and recordings are business records that are exempt from the peer-review privilege. The Owens affidavit, in fact, makes no mention of the critical audio recordings of the prank telephone calls as documents not kept in the ordinary course of business. The trial court might have felt that SBMC had the better argument as to the categorization of the evidence and that SBMC’s determination in this regard should be respected. However, “at the summary judgment stage the judge’s function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.” Anderson, 477 U.S. at 249.[3] To protect Lindsay’s right to a trial by jury all inferences must be drawn in his favor. “All reasonable doubts concerning the existence of a genuine issue of material fact must be resolved against the moving party.” Hanners v. Balfour Guthrie, Inc., 564 So.2d 412, 413 (Ala. 1990). “When a genuine issue of material fact exists, the jury must play its traditional role of a factfinder.” Ex parte BASF Constr. Chems., LLC, 158 So.3d 793 (Ala. 2013).

E. Release

In connection with seeking medical privileges at SBMC, Lindsay signed a release in 2008 extending absolute immunity to SBMC “[t]o the fullest extent permitted by law ... for any matter relating to appointment, reappointment, clinical privileges, or my qualifications for the same.” A contractual waiver- of liability that immunizes a party from future intentional tortious conduct is void as against public policy. Reece v. Finch, 562 So.2d 195, 200 (Ala. 1990). See also Barnes v. Birmingham Int’l Raceway, Inc., 551 So.2d 929, 933 (Ala.1989) (holding that “pre-race releases, although valid and consistent with public policy as to negligent conduct, are invalid and contrary to public policy as to wanton or willful conduct”). Because the issue of willfulness in this case is fact-bound and Lindsay has presented evidence from which an inference of willfulness may reasonably arise, immunity based on the release must also await development of the facts.

F. Rule 56(f) Motion

To utilize the original-source exception to the peer-review privilege, Lindsay filed a Rule 56(f), Ala. R. Civ. P., motion for a continuance to depose SBMC employees who had firsthand knowledge of the events at issue. “A typical situation for the appli *95 cation óf Rule 56(f) is where the opposing party cannot present by affidavits facts essential to justify his opposition because knowledge of those facts is exclusively with, or largely under the control of, the moving party.” Griffin v. American Bank, 628 So.2d 540, 542 (Ala.1993). Because the hospital staff who took the prank telephone calls and witnessed their effect have direct knowledge of relevant facts, the trial court should have permitted Lindsay to develop their testimony.

TV. Conclusion

Lindsay has raised triable issues of fact under the relevant statutes as to whether SBMC acted in good faith and conducted a reasonable investigation or indeed any investigation at all before erroneously suspending his privileges and reporting that fact to the medical board. Lindsay’s affidavit also raises a genuine factual question as to whether certain evidence claimed to be privileged is in fact discoverable under the business-records exception. He also is entitled to depose witnesses who have personal knowledge of the relevant facts regardless of whether they provided any information to the hospital about these events.
For the above reasons I respectfully dissent from affirming the trial court’s summary judgment.

. The underlying action was initially filed in the Montgomery Circuit Court because the Medical Licensure Commission of Alabama was a named defendant. That defendant was dismissed, and, on motion of SBMC, the case was transferred to Shelby County.

. Similarly the Health Care Quality Improvement Act of 1986, 42 U.S.C. § 11101 et seq., provides immunity to a hospital for a "professional review action” if, among other things, the action is taken "after a reasonable effort to obtain the facts of the matter.” 42 U.S.C. § 11112(a)(2).

. The trial court at the summary-judgment stage may not decide which party is more believable. "[Njeither the trial court nor this Court may undertake credibility assessments in reviewing testimonial evidence submitted in favor of, and in opposition to, a motion for a summary judgment, whereas making such credibility assessments is one of the key functions of the trial jury.” Lyons v. Walker Reg’l Med. Ctr., 868 So.2d 1071, 1077 (Ala.2003).